**James Perry LAMB et al., for himself and others, Plaintiffs,**

**v.**

**UNITED SECURITY LIFE COMPANY, a corporation, et al., Defendants.**

Civ. No. 10–295–C–2.

United States District Court,
S. D. Iowa, C. D.

May 17, 1972.

26

David L. Brodsky, Albert L. Harvey, Stewart, Garrett, Heartney, Jones & Brodsky, Des Moines, Iowa, Marvin

Cherner, Joseph S. Mead, Mead & Gladden, Birmingham, Ala., for plaintiffs.

James A. Lorentzen, Des Moines, Iowa, Richard E. Nolan, Davis, Polk & Wardwell, New York City, for defendant, Smith, Barney & Co.

J. Asa Rountree, Marc I. Stern, Debevoise, Plimpton, Lyons & Gates, New York City, A. Arthur Davis, John H. Heen, C. Carleton Frederici, Thoma, Schoenthal, Davis, Hockenberg & Wine, Des Moines, Iowa, for defendants Wheelabrator-Frye Inc. (Equity Corp.), Peyton H. Houston, Jakob Isbrandtsen and Albert E. Rising.

Kent M. Forney, John C. Cortesio Jr., Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, Iowa, for defendants General United Group, Inc., United Security Life Co., General United Life Ins. Co., Verlin Chapman, Lyman B. Hughes, Robert E. Igleheart, David Noble, Jack Schroeder and Raymond Smith.

## MEMORANDUM AND ORDER

HANSON, Chief Judge.

This matter comes before the Court upon a motion, filed by plaintiffs on June 14, 1971 while this cause was pending in the Northern District of Alabama, for a determination that the above-entitled action is to be maintained as a class action, and for individual notice to all members of the class. This class is asserted to consist of all persons, other than defendants, who owned stock of Guaranty Savings Life Insurance Co. ("Guaranty") prior to October 2, 1968 and who thereafter voluntarily exchanged this stock for that of defendant General United Group, Inc. ("General United"), or who later exchanged it for stock of United Security Life Co. ("United Security") upon the dissolution of Guaranty.

F.R.Civ.P. 23, which governs class actions, sets forth four prerequisites to a class action:

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In addition to asserting each of the above, plaintiffs have asserted the third alternative additional prerequisite required to be found by the Court, as set forth in Rule 23(b)(3):

that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Resistance to the motion has been noted, as of February 15, 1972, on the part of all defendants except Walter M. Jeffords, Jr., Walter J. Gruber and Smith, Barney & Co. Subsequently, on March 9, 1972, Smith, Barney & Co. joined in the resistance. The matter came on for hearing before the Court on March 10, 1972.

### I.

From the resistances and from the hearing, it is apparent that defendants concede that the class herein sought is too numerous for practicable joinder of all as parties, and that there are at least some questions of law and fact common to the class. It is further apparent that

three of the four matters listed in Rule 23(b)(3) as being pertinent to the superiority of a class action in this cause, class members interest in separate actions, litigation already commenced, and the desirability of concentrating litigation in the Southern District of Iowa, are inapposite to the present motion. As to the remainder of the prerequisites in Rules 23(a) and (b)(3), however, there is great disagreement among the parties. These prerequisites will all herein be considered by the Court, but since they have become much intertwined in arguments made by the parties, it is only possible to separate them to a limited degree.

One of the most basic problems for the Court to consider, going to the ability of plaintiffs herein, the purported representatives of the class, to fairly and adequately protect the interests of the class (Rule 23(a)(4)), and to the typicality and commonality of plaintiffs' claims (Rules 23(a)(3) and 23(b)(3), respectively) is the existence of possible conflicts within the class sought, of possible disparities between the representatives and those represented.

The first of the inherent conflicts asserted by defendants is that between those plaintiffs who voluntarily exchanged their Guaranty stock for that of General United, and those plaintiffs who, voluntarily or otherwise, received United Security stock upon the dissolution of Guaranty, in that each would presumably have a continuing interest in the viability of the defendant in which he or she holds stock, at the expense of the interests of plaintiffs holding stock in other defendant corporations.

■ Although it is true that if there are real or potential conflicts within a class, or if the interests of the representatives are sufficiently distinct from the remainder to preclude typicality and adequate protection of the class, then class action must be denied, Schy v. Susquehanna Corp., 419 F.2d 1112 (7th Cir. 1970) cert. den. 400 U.S. 826, 91 S.Ct.

51, 27 L.Ed.2d 55; Carroll v. Amer. Fed. of Musicians, 372 F.2d 155 (2d Cir. 1967), rev'd on other grounds, 391 U.S. 99, 88 S.Ct. 1562, 20 L.Ed.2d 460 (1968); Giordano v. Radio Corp. of America, 183 F.2d 558 (3d Cir. 1950); Barbot v. Frackman, 191 F.Supp. 171 (S.D.N.Y. 1961), it is likewise true that the interests of each member of the class need not be identical so long as there are sufficient allegations of a common course of conduct, Green v. Wolf Corp., 406 F.2d 291 (2d Cir. 1968) cert. den. Troster, Singer & Co. v. Green, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766; Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909 (9th Cir. 1964) or a common nucleus of operative fact, Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2d Cir. 1968); Siegel v. Chicken Delight, Inc., 271 F.Supp. 722 (N.D.Cal.1967). The Court is here satisfied that potential conflict is minimal, and is far overbourne by the common course of fraud and misrepresentation alleged in the complaint. Not only does the representative group contain plaintiffs from each of the groups assertedly in conflict, but it appears that the respective interests and more parallel and unitary than solitary; both seek redress for fraud and misrepresentations in which both groups were allegedly injured. It seems tautologous to say, as defendants do here, that plaintiffs seek to protect the viability of the very corporations that caused their injury at the expense of their own redress. Such reasoning would appear to subvert the rationale behind the majority of stock fraud and stockholders derivative actions, where it is overwhelmingly the case that corporations offering and issuing the stock exchanged are joined as defendants. Furthermore, it appears from the complaint and from the hearing held herein that General United and United Security are not independent defendants, but are heavily interlinked under a common control, such that all violations alleged might be shown to emanate from an indivisible nucleus of corporations, with

**30**

liability extending back in like manner. If such is the case, joinder of the two assertedly conflicting classes might be required in any event. As a final point, any judgment obtained herein would be joint and not several, such that there is no real distinction to be drawn among defendants until *after* liability has been determined. If it appears at that time, or at any other time, that plaintiffs in the two groups assertedly in conflict are drawing distinctions among defendants in order to protect their own, the Court will then order the creation of subclasses pursuant to F.R.C.P. Rule 23(c) (4), or take other appropriate measures. For the present, however, the Court sees nothing in the coexistence of stockholders of United Security and General United in one class that would cause preclusion of a class action under Rule 23, for there is neither an inclusion of defendants in the plaintiff class, an antagonism between members of the class and their representatives, nor relief sought which would be antithetical to certain members of the class sought. Cf. Carroll v. Amer. Fed. of Musicians, *supra*; Giordano v. Radio Corp. of America, *supra*; Guttmann v. Braemer, 51 F.R.D. 537 (S.D. N.Y.1970); Maynard, Merel & Co. v. Carcioppolo, 51 F.R.D. 273 (S.D.N.Y. 1970); Johnson v. Amer. Gen'l. Ins. Co., 296 F.Supp. 802 (D.D.C.1969); Pomierski v. W. R. Grace & Co., 282 F.Supp. 385 (N.D.Ill.1967); Barbot v. Frackman, *supra*.

The second conflict and disparity of interest between plaintiffs and the group they seek to represent concerns the status of plaintiff Bedford F. Seale. Mr. Seale was a director of Guaranty at the time of the transactions complained of, voting for the several resolutions which effected the exchange of Guaranty stock and for that of General United and the subsequent merger of Guaranty into United Security with attendant dissolution of the latter. He also participated in the initial General United exchange.

■ It appears to the Court that, notwithstanding the fact that Mr. Seale was a director, there are sufficient allegations that he was a victim of fraud and misrepresentation not distinct from the rest of the stockholders. He asserts his interests here in that capacity. His personal liability, if any, might be relevant in a derivative action, precluding his participation as a plaintiff therein, but the Court cannot see anything in Mr. Seale's former status at this time antagonistic to or in conflict with other sought to be included in the class, although he might eventually, upon trial of this cause, be defeated upon his individual claim by reason of that status, just as other plaintiffs may be individually defeated by other defenses.[1] Concededly, Mr. Seale is not the average uninformed investor, but this does not require either the conclusion that he cannot protect and vigorously assert the interests of others in the class, or that his interest in redress of the fraud and misrepresentation alleged is not identical to those he seeks to represent. His presence as a plaintiff does not in any way detract from the viability of a class action here, particularly where he is only one of a group of plaintiffs seeking to represent the class.

■ Neither does the appearance of Mr. Joseph S. Mead in the capacity of an attorney, as well as in that of a plaintiff, detract from the viability of the class. Certainly, other attorneys have participated in 10b–5 actions both as a party and as counsel without demur, Schy v. Susquehanna Corp., *supra;* Wechsler v. Tenney Corp., CCH Fed.Sec.

---

1. That certain knowledge might be imputed to Mr. Seale because of his position as an insider, creating a bar under the statute of limitations is not, as will be discussed, *infra*, a relevant consideration, and would not preclude his appearance as a class representative in any event. DeMilia v. Cybernetics Int'l Corp., CCH Fed.Sec.L.Rep. No. 93386 (S.D.N.Y. 1972); Miller v. Mackey Int'l Inc., 452 F.2d 424, 430 (5th Cir. 1971).

L.Rep.No.92923 (S.D.N.Y.1971). The Court cannot accept the proposition that Mr. Mead seeks to obtain a greater proportion of any recovery than the others, and is therefore an unfit representative of the class, for any fees Mr. Mead earns as an attorney in this cause will be for services rendered in the pursuit thereof, a wholly different proposition than recovery of some sum in redress. Furthermore, attorneys' fees will be coming under the scrutiny of the Court at a later point in this proceeding, and if there are any problems raised by Mr. Mead's joint capacity, they may be resolved at that time.

Defendants next assert that one of the plaintiff representatives, Mr. J. Haran Lowe, Jr., does not fit within the description of the class requested in plaintiffs' motion,

> all persons who owned stock of Guaranty Savings Life Insurance Co. on or about October 2, 1968, and thereafter received in exchange therefor stock of General United Group, Inc. or United Security Life Co.[2]

in that Mr. Lowe still owns, and is in possession of shares of Guaranty Savings Life Insurance Co.

■ Although it does appear that Mr. Lowe does not fit this precise class description, it is readily apparent that Mr. Lowe is well within the purview of the complaint. From the record herein it further appears that he should have received shares of United Security upon the dissolution of Guaranty, and is thus now an equitable owner of United Security shares, with interests identical to those precisely falling within the class. The Court will accordingly find him to be a proper member of the class which, when determined from the complaint, and not the motion, will be

> all persons who owned stock of Guaranty Savings Life Insurance Co. on or about October 2, 1968, and thereafter received, or should have received in exchange therefor stock of General United Group, Inc. or United Security Life Co.

and will further find him to be a perfectly adequate representative of the class, with a claim of fraud and misrepresentation identical to, and typical of all the rest.[3]

■ Defendants next two points in opposition to a determination of a class action herein are the inadequacy of the size of the representation and the asserted lack of interest on the part of other members of the class.[4] Neither, however, is an appropriate factor for the Court to consider, for the purpose of Rule 23 is to provide a "device for vindicating claims which, taken individually, are too small to justify legal action but which are of significant size if taken as a group", Escott v. Barchris Const.

---

2. Although the motion herein reads United Security Life Insurance Co., the complaint has been amended to be United Security Life Co.

3. This situation is unlike that in Guttmann v. Braemer, *supra*, since there the plaintiff chose to resist the exchange of stock and subsequently sued for recission, a remedy antagonistic to those who had exchanged their stock, whereas here Mr. Lowe appears from his affidavit to have continually sought to receive dividends, and now seeks compensatory damages in the same manner as others who effected an exchange.

Furthermore, it is to be noted that, even assuming Messrs. Seale, Mead and Lowe would be found at some later point in these proceedings not to be adequate representatives of the class, the large number of class representatives appearing herein means that the viability of the class would not be affected by their exclusion therefrom.

4. Plaintiffs herein seeking class determination own only 8682 of the 1,127,585 shares of Guaranty outstanding on October 2, 1968, and if Mr. Seale's shares are excluded, only 2459 are present. These shares are less than 2% of the 459,174 shares owned by all potential members of the class.

Corp., 340 F.2d 731 (2d Cir. 1965), cert. den. Drexel & Co. v. Hall, 382 U.S. 816, 86 S.Ct. 37, 15 L.Ed.2d 63. To require a large number of plaintiffs to appear as representatives or even to make some sort of inquiry about small claims in a big arena would significantly undermine this purpose, making the class action the tool of the large, the rich and the powerful. Furthermore, since most corporations have large amounts of outstanding stock, and stockholders are usually "insiders" or hold comparatively small blocks of stock, the imposition of such requirements would likewise considerably cripple the viability of Rule 10b–5, allowing an unwanted benefit to those injuring large numbers of small stockholders.

In fact, it has been pointed out that there is absolutely no correlation between the size of the representation and the vigor with which claims are pursued. Rather, it is the size of the class which may provide the appropriate motivating force, since the prospect of compensation proportionate to recovery will motivate plaintiffs' counsel to make efforts and expend resources far beyond that called for by the small group of individual plaintiffs. This is one of the underlying means by which securities laws may be vigorously enforced, Cf. Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); Murphy v. North American Light & Power Co., 33 F.Supp. 567 (S.D.N.Y.1940); Philadelphia Housing Auth. v. Amer. Radiator & Standard Sanitary Corp., 269 F.Supp. 540 (E.D.Pa.1967) (antitrust), and in such cases courts have been disposed to allow class actions in cases where the size of the representative interest was far more miniscule than that here, especially where, as here, qualified and experienced counsel has been retained to represent the class interest. Eisen v. Carlisle & Jacquelin, *supra*; Green v. Wolf Corp., *supra*.

 Likewise, failure of members of the class to express interest in a lawsuit does not necessarily indicate an inadequacy in the representation. Eisen v. Carlisle & Jacquelin, supra; Mersay v. First Republic Corp., 43 F.R.D. 465 (S.D.N.Y.1968). It is equally likely that failure to come forward means only that there is a general lack of knowledge of the lawsuit, that others lack the resources to initiate communication in this regard, or that other members of the class, knowing of this suit, do not object to plaintiffs' representation and are content to sit back and allow the action to proceed until such time as they might, without effort, share in a favorable verdict, Dolgow v. Anderson, 43 F.R.D. 472 (E.D.N.Y.1968). Thus, neither failure of others in the class to show interest, nor the relatively small size of the representative group gives the Court pause in deciding whether or not to allow this matter to proceed as a class action.

Yet another major problem area to the parties herein, touching on the questions of whether common issues of law and fact predominate, whether a class action is superior to other possible means of adjudication, and whether plaintiffs can adequately represent the class if their own claims are barred, is the role of the issues of reliance and the statute of limitations in this suit. It is defendants' contention that these are both subjective and individual, since it is asserted that the applicability of the statute of limitations turns on the time when each plaintiff discovered the fact constituting the fraud and misrepresentation alleged, Alabama Code Tit. 7, Section 42, and that individual reliance is an integral part of the instant cause of action.

 Although at least one Circuit has recently held that reliance is not a requisite element of 10b–5 actions once the materiality of the misrepresentations made have been established, Kahan v. Rosenstiel, 424 F.2d 161 (3d Cir. 1970); Gottlieb v. Sandia Amer. Corp., 452 F.2d 510 (3d Cir. 1971), at least where injunctive relief and not damages is being sought, and the Supreme Court has held

that reliance is not required under Rule 14a–9, Mills v. Electric Auto-Lite Co., *supra,* it does not appear that this Circuit has accepted as broad a view of 10b–5. Erling v. Powell, 8 Cir., 429 F.2d 795 (1970); Greater Iowa Corp. v. McLendon, 8 Cir., 378 F.2d 783 (1967). However, it is not necessary for this Court to decide this issue at this time, nor is it necessary to decide whether reliance may be implied from participation in the transaction in question, thus being transformed from an individual issue of fact to a common question of law. Cf. Dolgow v. Anderson, *supra.* It suffices to say that the presence of reliance as an individual issue does in no way preclude the determination that this action may proceed as a class action under F.R.C.P. Rule 23, for it has long been held that actions for securities fraud under Rule 10b–5 containing separate elements of reliance for each plaintiff might still proceed as class actions. Green v. Wolf Corp., *supra;* Esplin v. Hirschi, 402 F.2d 94 (10th Cir. 1968) cert. den. 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459; Eisen v. Carlisle & Jacquelin, *supra;* De Hilia v. Cybernetics Intl. Corp., CCH Fed.Sec.L.Rep.No.93386 (S.D.N.Y.1972); Epstein v. Weiss, 50 F.R.D. 387 (E.D. La.1970); Berland v. Mack, 48 F.R.D. 121 (S.D.N.Y.1969); Mersay v. First Republic Corp., *supra;* Fischer v. Kletz, 41 F.R.D. 377 (S.D.N.Y.1966); Kronenberg v. Hotel Governor Clinton, Inc., 41 F.R.D. 42 (S.D.N.Y.1966); Brennan v. Midwestern United Life Ins. Co., 259 F. Supp. 673 (N.D.Ind.1966). *Contra,* Berger v. Purolator Products, Inc., 41 F.R.D. 542 (S.D.N.Y.1966).

██ This is an eminently desirable conclusion. Class actions under Section 10(b) of the Securities Exchange Act of 1934 have been shown to be one of the major weapons against securities fraud, Green v. Wolf Corp., *supra,* and provide a most useful tool where large numbers of securities holders have been defrauded by a common course of dealing, Harris v. Palm Springs Alpine Estates, Inc., *su-*

*pra.* Stockholders are persons who often have no present ability to seek their own remedy. Hohmann v. Packard Instrument Co., 399 F.2d 711 (7th Cir. 1968), and even the SEC concedes that there is no viable alternative to the 10b–5 class action. Dolgow v. Anderson, *supra.* Thus, to reject the possibility of a class action merely because of the existence of the individual reliance issue would wholly eviscerate Rule 10b–5, because that issue is almost invariably present. Perhaps it is true that class actions are inappropriate where there are a multiplicity of misrepresentations, each with wholly different sorts of reliance elements, Advisory Committee's Notes on Rule 23, 39 F.R.D. 69, 103 (1966), but where, as herein alleged, the representations made are unitary and were common to all plaintiffs, the Court can perceive no reason not to allow the class action to go forward at least as to common issues, Cf. Oppenheimer v. F. J. Young & Co., Inc., 144 F.2d 387 (2d Cir. 1944); Moscarelli v. Stamm, 288 F.Supp. 453 (E.D. N.Y.1968); Richland v. Cheatham, 272 F.Supp. 148 (S.D.N.Y.1967); Harris v. Jones, 41 F.R.D. 70 (D.Utah 1966); Fischer v. Kletz, *supra,* with reliance coming in at some later point in these proceedings by individualized procedures after all common questions have been determined, Mersay v. First Republic Corp., *supra.*

██ Similar considerations to those discussed in connection with the reliance issue obtain for the question of which plaintiffs, if any, are barred by the statute of limitations. Although plaintiffs appear to concede that the question is an individual one, turning upon the time at which each of them discovered, or should reasonably have discovered, the fraud complained of, Parrent v. Midwest Rug Mills, Inc., 455 F.2d 123 (7th Cir. 1972); Bailes v. Colonial Press, Inc., 444 F.2d 1241 (5th Cir. 1971); Vanderboom v. Sexton, 422 F.2d 1233 (8th Cir. 1970) cert. den. 400 U.S. 852, 91 S.Ct. 47, 27 L.Ed.2d 90; Esplin

v. Hirschi, *supra*; Azalea Meats, Inc. v. Muscat, 386 F.2d 5 (5th Cir. 1967); Hart v. First Natl. Bank, 373 F.2d 202 (5th Cir. 1967); Moss v. Davitt, 255 Ala. 513, 52 So.2d 515 (1951), and whether it was more than one year prior to the time of filing herein,[5] such individual issues, unless they predominate (and they do not do so here) do not and must not preclude class actions, given the exceptional importance, superiority and desirability of the private 10b–5 action.[6] Furthermore, as statute of limitations in the present context would be a jury issue, Cartwright v. Braly, 218 Ala. 49, 117 So. 477 (1928) as well as an affirmative defense under F.R.C.P. Rule 8(c), upon which defendants have the burden of proof. The Court has no intention of subverting either plaintiffs' jury trial right or the requirements of F.R.C.P. Rules 8, 12 and 56 by adjudicating in advance of trial, as defendants desire, the individualized question of statute of limitations, or of emasculating Rule 23 by denying a class action merely because *some* significant individual issues exist. *See*, Dolgow v. Anderson, *supra*; Siegel v. Chicken Delight, Inc., *supra*. It is enough that plaintiffs have properly pled a common course of conduct on the face of their complaint, including, but not limited, to false representations to the class, a breach of fiduciary duty, and a violation of applicable statutes, as well as general reliance by the class, and that the complaint and answer herein raise sufficient questions of law and fact common to the class to allow the Court to find that Rule 23, which only requires a *predominance* of common issues, has been met. Harris v. Palm Springs Alpine Estates, Inc., *supra;* Katz v. Carte Blanche Corp., 52

F.R.D. 510 (E.D.Pa.1971); Berland v. Mack, *supra*; Moscarelli v. Stamm, *supra*; Fischer v. Kletz, *supra*. It has never been the rule that all issues must be identical for all members of the class. So long as it is possible to say, as it is here, that the economy of time, effort and expense, as well as the desirability of uniformity are greater than the burden of determining individual issues, the Court will allow a class action as the superior method. The prospect of remaining issues to be resolved by separate trials or other appropriate procedures, after common issues have been adjudicated, provides no particular deterrent in the mind of the Court. See, Esplin v. Hirschi, *supra*; Katz v. Carte Blanche Corp., *supra*; Dolgow v. Anderson, *supra*; Siegel v. Chicken Delight, Inc., *supra*; Weiss v. Tenney Corp., 47 F.R.D. 283 (S.D.N.Y.1969).

The question of periods of limitation is also significant to defendants' assertion that certain representatives of the class are barred, and so cannot serve as representatives of the class. This would require an excursion into state law, which is wholly unwarranted in Rule 23 determinations. State of Minnesota v. United States Steel Corp., 44 F.R.D. 559 (D.Minn.1969). Furthermore, since the statute of limitations is an affirmative defense under F.R.C.P. Rule 8(c), it cannot affect the question of whether a good cause of action has been plead, but is subject to being proven up by defendant at trial. Zeigler v. Gibralter Life Ins. Co., 43 F.R.D. 169 (D.S.D.1967). At least one court has recently held that the possibility of a class representative later being barred from recovery because of some statute of limitations does not preclude

5. Since the time computation for intervenors under the statute of limitations relates back to the time of filing for the class, subsequent running of the limitations period does not bar those wishing to intervene. Escott v. Barchris Const. Co., *supra*; State of Minnesota v. United States Steel Corp., 44 F.R.D. 559 (D.

Minn.1969). However, determination of a class action does not extend the period of limitations for those whose time has run as of the date of filing. Philadelphia Electric Co. v. Anaconda American Brass Co., 43 F.R.D. 452 (E.D.Pa.1968).

6. See, *supra*, pp. 32–34.

his service as a class representative. De Milia v. Cybernetics Intl. Corp., *supra*; Cf., also, Miller v. Mackey Intl. Inc., 452 F.2d 424 (5th Cir. 1971).

▮ *De Milia* notwithstanding, the Court has no intention, in making a Rule 23 determination, of adjudicating whether certain representatives of the class have a cause of action, or a possibility of prevailing on the merits, or whether they are barred by the statute of limitations, by a weakness in their case, or for any other reason. To do so would, first of all, completely subvert the requirements and standards set forth for motions to dismiss and motions for summary judgment under F.R.C.P. Rules 12 and 56, as well as those of Rule 23 itself by importing the requirements of F.R.C.P. Rule 65 (preliminary injunctions) thereinto. Rule 23 simply does not call for the sort of inquiry that defendants suggest:

> Rule 23 delineates the scope of inquiry to be exercised by a district judge in passing on a class action motion. Nothing in the Rule indicates the necessity or the propriety of an inquiry into the merits. Indeed, there is absolulely no support in the history of Rule 23 or legal precedent for turning a motion under Rule 23 into a Rule 12 motion to dismiss or a Rule 56 motion for summary judgment by allowing the district judge to evaluate the possible merit of the plaintiffs' claims at this stage of the proceedings.[7] Failure to state a cause of action is entirely distinct from failure to state a class action. Miller v. Mackey Int'l. Inc., *supra*. [Footnote added.]

See, also Kahan v. Rosenstiel, *supra*; Green v. Wolf Corp., *supra*, (note 5); City of Philadelphia v. Emhart Corp., 50 F.R.D. 232 (E.D.Pa.1970); Fogel v. Wolfgang, 47 F.R.D. 213 (S.D.N.Y.1969). Cf. Gaddis v. Wyman, 304 F.Supp. 713 (S.D.N.Y.1969); Zeigler v. Gibralter Life Ins Co., *supra*. Additionally, making an inquiry into the merits at this juncture would be invasive of plaintiffs' jury trial right, and would mean that there could never be a class action until major portions of the claim were adjudicated, in derogation of the requirement of Rule 23(c) (1) that the class action determination be made "as soon as practicable after the commencement of an action", Fogel v. Wolfgang, *supra*, thus completely negating all of the economies that class actions were designed to achieve. Finally, as already discussed *supra*, requiring plaintiff to show his likelihood of prevailing on the merits before determining that an action is a class action would significantly impair the effectiveness of the Rule 23 class action device in stock fraud actions, as well as Rule 10b–5 and other private stock fraud remedies, so important in keeping the securities marketplace free of taint.

Authority for the proposition that those seeking a class action must establish the merit of their claims, or at least show a substantial possibility of success, is slight and questionable. Greenstein v. Paul, 275 F.Supp. 604 (S.D.N.Y.1967) aff'd. 400 F.2d 580 (2d Cir. 1968) and Kauffman v. Dreyfus Fund, Inc., 434 F. 2d 727 (3d Cir. 1970) cert. den. 401 U.S. 974, 91 S.Ct. 1190, 28 L.Ed.2d 323 (1971) do not compel this result. *Greenstein* only deals with standing to sue under Rule 10b–5, i.e., whether plaintiff is within the class protected, and *Kauffman* only holds that a plaintiff who lacks standing cannot serve as a class representative, that a plaintiff must be a member of the class injured and not a mere

---

7. Not only would an inquiry on the merits subsume the functions of motions under Rules 12 and 56, but the standard to be used, more stringent than that for summary judgment, would impose a considerably greater burden upon plaintiffs, a result not contemplated by the Federal Rules. Cf. Dolgow v. Anderson, 53 F.R.D. 664 (E.D.N.Y.1971) ("Dolgow III"); Fogel v. Wolfgang, *supra*; Mersay v. First Republic Corp., *supra*.

volunteer. Neither issue is present in the instant case. Cf. Kansas City, Mo. v. Williams, 205 F.2d 47, 51 (8th Cir. 1953) cert. den. 346 U.S. 826, 74 S.Ct. 45, 98 L.Ed. 351.

Perhaps the strongest support for defendants' contention is to be found in Dolgow v. Anderson, 43 F.R.D. 472 (E.D. N.Y.1968) ("Dolgow I") which appears to directly hold that a hearing would be required at which plaintiff, in order to obtain a class action, would have to show a substantial possibility of his prevailing on the merits. However, as was pointed out in Katz v. Carte Blanche Corp., *supra*, 52 F.R.D. at 513:

> While that Court [Dolgow] plainly held that unless so convinced, the action was not to be allowed to proceed as a class action, [a holding reconfirmed in Dolgow v. Anderson, 53 F. R.D. 664 (E.D.N.Y.1971) ("Dolgow III")] in reaching that holding, the Court confronted the questions of who was responsible for what notice to whom and suggested that the defendant might properly bear the burden of effecting and financing notice. In that context, the Court was unprepared to assign such a burden without first examining the merits of the plaintiff's case. Since, however, the questions of who is responsible for what notice to whom need not be confronted in determining the bare maintainability of a class action, we do not [as here] reach them in rendering this opinion. [footnotes omitted]

In *Dolgow I* the Court had serious reservations about the existence of a common course of conduct, and wanted further clarification before ruling. Such matters do not trouble the Court here, nor does

the possibility exist, as it did in Fischer v. Kletz, supra, that discovery will reveal the inappropriateness of the class action device. Furthermore, neither the opinion of the Second Circuit in this case, Dolgow v. Anderson, 438 F.2d 825 (2d Cir. 1971) ("Dolgow II"), nor their earlier opinion in Green v. Wolf Corp., supra, can be read as approving of this procedure, and Dolgow II seems in fact to imply disapproval.

Finally, it is to be noted that *Dolgow* has not enjoyed any tremendous manner of acceptance, even within the district of its origin, and has been sharply criticized both there and elsewhere.[8] See, Miller v. Mackey Intl. Inc., *supra*; Fogel v. Wolfgang, *supra*. So far as the Court has been able to determine, in the four years since Dolgow I was decided, during which time overwhelming numbers of 10b–5 suits have been allowed to proceed as class actions without the necessity of a hearing on the merits, only Milberg v. Western Pacific R.R. Co., 51 F. R.D. 280 (S.D.N.Y.1970) and Wechsler v. Tenna Corp., supra, have taken a similar position, although other courts have, in cases where notice to a large class at great expense was involved, or where claims bordered on the frivolous, *after* determining that Rule 23 requirements were met and that a class action was proper, *subsequently* required a hearing on the merits to determine who was to pay and whether the probability of success justified the immense expense and effort of transmitting notice to each member of the class. See Miller v. Mackey Intl. Inc., supra; Eisen v. Carlisle & Jacquelin, 52 F.R.D. 253 (S.D.N.Y.1971) ("Eisen II"); Berman v. Narragansett Racing Assn., 48 F.R.D. 333 (D.R.I. 1969); Cannon v. Texas Gulf Sulphur

---

8. Incredibly, *Doglow III* proceeded to hear the case on its merits and determined it not to be meritorious. Thereupon, notice to the potential class was denied "since dismissal of the class aspect of the case is on the merits." However, one reason given for dismissal of the class action was "to avoid the need for notice."

Secondly, *Dolgow I* intimated that class action determination might be delayed until after discovery was in an advanced stage, and then might be denied for reason that it would be unfair to those who had not participated. Such forms of "Catch-22" bootstrapping do little to add to the credibility of this line of cases.

Co., 47 F.R.D. 60 (S.D.N.Y.1969) (order subsequently rescinded).

Both *Milberg* and *Dolgow*, moreover, appear to be somewhat distinguishable, as both involved suits that were very close to being patently frivolous, *Milberg* being an action seeking, with patently little chance of success, to vastly expand the reach of Rule 10b–5, and *Dolgow* having been certified as frivolous by the Court in *Dolgow* III. As such, both appear to fall within the purview of a standard enunciated in Philadelphia Elec. Co. v. Anaconda Amer. Brass Co., 43 F.R.D. 452 (E.D.Pa.1968); Fogel v. Wolfgang, *supra*; Weiss v. Tenney Corp., *supra*; City of Philadelphia v. Emhart Corp., *supra*; and Katz v. Carte Blanche Corp., *supra*, that the complaint state a claim cognizable as a class action, Zeigler v. Gibralter Life Ins. Co., *supra*; Kronenberg v. Hotel Governor Clinton, Inc., 41 F.R.D. 42 (S.D.N.Y.1966), be "sincere", "more than frivolous", or contain a genuine issue, 3B Moore's Federal Practice, Par. 23.45[3] *without* getting into the merits of the case. Phila. Elec. Co. v. Anaconda Amer. Brass Co., *supra*. In sum, the Court will follow the majority rule set forth in Miller v. Mackey International Inc., *supra*, 452 F.2d at 427:

> In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.

See, also, Schlagenhauf v. Holder, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964); Kahan v. Rosenstiel, *supra*; Johnson v. Georgia Highway Express, 417 F.2d 1122 (5th Cir. 1969); City of Philadelphia v. American Oil Co., 53 F. R.D. 45 (D.N.J.1971); Katz v. Carte Blanche Corp., *supra*; Berman v. Narragansett Racing Assn., *supra*; Berland v. Mack, *supra*; Fogel v. Wolfgang, *supra*; Mersay v. First Republic Corp., *supra*; State of Minnesota v. United States Steel Corp., 44 F.R.D. 559 (D. Minn.1968); Siegel v. Chicken Delight,

Inc., *supra*, and after careful examination of the complaint, and accounting the ongoing course of these proceedings, determines that the issues raised herein are substantial, and should therefore go forward as a class action.

## II.

Having thus disposed of each of defendants' specific contentions in resistance to a determination that this case shall proceed as a class action, it is incumbent upon the Court to make those general findings required by F.R.C.P. Rule 23(a) and (b) (3). In so doing, it is unnecessary to decide whether the burden of proof is upon the plaintiffs, Demarco v. Edens, 390 F.2d 836 (2d Cir. 1968); Katz v. Carte Blanche Corp., *supra*; City of Phila. v. Emhart Corp., *supra*; Phila. Elec. Co. v. Anaconda Amer. Brass Co., *supra*; Polakoff v. Delaware Steeplechase & Race Assn., 264 F.Supp. 915 (D.Del.1966); Carroll v. Associated Musicians of Greater N. Y., 206 F.Supp. 462 (S.D.N.Y.1962) aff'd 316 F.2d 574 (2d Cir. 1963); Underwood v. Maloney, 14 F.R.D. 222 (E.D.Pa. 1953); Advisory Comm. Notes, 39 F.R. D. 98 (1966), or whether, in giving Rule 23 a liberal rather than a restrictive interpretation, there must be a clear showing that denial of a class action is justified after consideration of all relevant factors, Green v. Wolf Corp., *supra*; Esplin v. Hirschi, *supra*; Eisen v. Carlisle & Jacquelin, 391 F.2d at 563, for it is clear that plaintiffs have satisfied any applicable burden when the conclusory statements of their motion for class action determination are taken together with the more specific allegations of the complaint.

Accordingly, in the light of the complaint, motion for class action determination and other documents on file in this cause, as well as the hearing held on this matter on March 10, 1972, the Court finds:

1) That the class herein is so numerous (more than 200) that joinder of all

members is completely impractical, a point which defendants have not contested;

2) That there are many common questions of law and fact common to the class. The Court will not give the appearance of delimiting these issues at this time by setting them forth with any degree of specificity, but generally they relate to alleged misrepresentations made by defendants, whether these misrepresentations, if proved, constitute a statutory violation and create a private right of action;

3) That plaintiffs' claims, taken together are typical of the class. This matter has been discussed at great length, *supra*;

4) That the representative parties will fairly and adequately protect the interests of the class, likewise a matter previously discussed;

5) That the common questions of law and fact, as noted, considerably predominate over the individual issues of reliance and limitations, which may be adjudicated separately after other issues have been litigated fully;

6) That the class action is a vastly superior means of proceeding here, because (A) there is no really effective alternative which would effect the policies of applicable federal statutes, (B) considerable economies of time, expense and effort may be achieved when compared to a multitude of individual trials, or the confusion created by joinder of many party plaintiffs, and (C) absent the class action device, many potential

members of the class would be forced to waive the assertion of their rights, as it would be too expensive and too disutilitous to proceed independently.

7) That, in terms of the above economies of class action and disutilities of proceeding otherwise, the difficulties that this Court can foresee as likely to be encountered in the management of this cause as a class action are not insurmountable, and may be readily resolved by judicious application of the many procedures and great flexibility allowed by F.R.C.P. Rule 23(c), (d), and (e).

### III.

In the light of the previous discussion herein, and the findings above, the Court will grant plaintiffs' motion for class action determination. However, there remains to be considered the problem of what notice, if any, is to be sent to the class at this time, and who is to pay for it.[9]

Not surprisingly, each side asks that the costs of notice be imposed on the other. Plaintiffs would like notice sent immediately so that members of the class can intervene if desired and can participate in discovery, and for further reason that the scope of this lawsuit can thereby begin to be defined.[10] Defendants, on the other hand, desire notice to be deferred until after the completion of discovery, so that they might have opportunity to show that further class proceedings would not be meritorious, and so that the expense and possible harm to reputation could be avoided if this cause

---

9. F.R.C.P. Rule 23(c) (2) provides:
 In any class action maintained under subdivision (b) (3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude him from the class if he so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if he desires, enter an appearance through his counsel.

10. To this end, plaintiffs transmitted to the Court, while this cause was still pending in the Northern District of Alabama, a proposed notice to the class. Since the transfer of this case, however, this proposal is now somewhat dated, and is unsatisfactory to the Court in other particulars, including the omission of matters required by Rule 23(c) (2).

of action is later shown to be without merit.

In the absence of any specification in Rule 23, many courts have imposed the burdens and costs of notifying the class in the first instance upon the plaintiffs, Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2d Cir. 1968) (*"Eisen* I") and 52 F.R.D. 253 (S.D.N.Y.1971) (*"Eisen* II"); Katz v. Carte Blanche Corp., 53 F.R.D. 539 (W.D.Pa.1971) (*"Katz* II"); Berman v. Narragansett Racing Assn., 48 F.R.D. 333 (D.R.I.1969); Weiss v. Tenney Corp., 47 F.R.D. 283 (S.D.N.Y. 1969); Richland v. Cheatham, 272 F. Supp. 156 (S.D.N.Y.1967), with a right or reimbursement should they prevail, *Katz* II, *supra*; Berman v. Narragansett Racing Assn., *supra*; Berland v. Mack, 48 F.R.D. 121 (S.D.N.Y.1969), holding that facilitation of class actions under Rule 23 did not mean financing them with corporate funds, Berland v. Mack, *supra*.

Other courts, however, have noted the desirability of apportioning costs of notice between the parties in the sound discretion of the court, *Eisen* II, *supra*; Berland v. Mack, *supra*; Bragalini v. Biblowitz, CCH Fed.Sec.L.Rep.No.92537 (S.D.N.Y.1969); Herbst v. Abel, 47 F.R.D. 11 (S.D.N.Y.1969); State of Minnesota v. United States Steel Corp., 44 F.R.D. 559 (D.Minn.1968), or even of requiring defendants to pay all costs of notice, though perhaps with plaintiffs being required to post a bond for reimbursement should they lose on the merits, *Katz* II, *supra*; *Eisen* II, *supra*; Dolgow v. Anderson, 43 F.R.D. 472 (E.D. N.Y.1968).[11] These courts have noted that a rigid rule that plaintiff pays would, in cases where there is a large class, heavy notice expense, and prospective recovery of only small individual amounts, effectively require dismissal of possibly meritorious claims, frustrating the public policy behind both the liberally interpreted class action rule and the federal securities laws that there should be no profit from illegal acts merely because small frauds have been perpetrated on many. A rigid rule might also preclude class plaintiffs who have relied on the pendency of the class action to the point where they become time-barred.[12]

Apportionment, or requiring defendant to bear the cost of notice, on the other hand, may be desirable since in many actions the defendant stands in a fiduciary relation with those allegedly defrauded, Cady, Roberts & Co., 40 SEC 907 (1961), since defendants have an interest in seeing all members of the class bound by *res judicata* (especially if they prevail on the merits or settle), and since defendants are benefited by the preclusion of 'one-way' intervention or collateral estoppel if liability is established against them. Furthermore, corporate defendants may already have the mechanics at hand for contacting the members of the class, and thus may achieve considerable savings in cost.

Unless apportionment or shifting the cost of notice to a corporate defendant is carefully policed, however, with scrupulous avoidance of a mechanical rule that defendants pay or contribute whenever a breach of fiduciary duty is alleged, the result may well be a spate of frivolous suits, imposing unfair burdens upon defendants for which they could only rarely obtain reimbursement. Accordingly, the ultimate goal in each case, in deciding who is going to bear the costs of notice, is to facilitate the valid claim, yet to frustrate, as much as possible, the frivolous or vexatious.

11. One court has gone so far as to suggest that the court might itself bear the burden of notice costs. School District of Philadelphia v. Harper & Row Publishers, Inc., 267 F.Supp. 1001 (E.D.Pa. 1967).

12. This action, for example, has now been pending almost a year without determination of the class question.

Whether this goal is met, and thus whether or not the cost of notice should be apportioned or shifted to the defendants *in toto* depends on a multitude of relevant factors, including the apparent merit or lack of merit in the claim, the presence or absence of genuine issues of fact and law, the strength of defendants' desire for *res judicata* effect, the number of class representatives, their financial responsibility, the value and percentage of their holdings when compared to the class as a whole, the anticipated type and approximate cost of notice, plaintiffs' ability to make the initial outlay, the ratio of the cost of notice to total anticipated recovery, the public policies underlying the type of action being prosecuted, and whether such types of action have traditionally been allowed to proceed as class actions. City of New York v. International Pipe & Ceramics Corp., 410 F.2d 295 (2d Cir. 1969); Green v. Wolf Corp., 406 F.2d 291 (2d Cir. 1968); *Katz II, supra; Eisen II, supra*; Berland v. Mack, *supra*.

Of course, some of these factors are not very crystallized at an early stage of litigation, and so some courts, recognizing the burden and expense of notice, as well as possible injury to business reputation, have chosen to defer decision on class notice until either after a preliminary evidentiary hearing on the merits, Dolgow v. Anderson, *supra*, after the completion of discovery, City of Philadelphia v. Emhart Corp., 50 F.R.D. 235 (E.D.Pa.1970), after both discovery and an evidentiary hearing, *Eisen II, supra*; Cannon v. Texas Gulf Sulphur Co., 47 F.R.D. 60 (S.D.N.Y.1969) (later rescinded), or even after plaintiff has prevailed on the merits.

Waiting until after plaintiff prevails is obviously undesirable, however, since this effectively resurrects the spectre of 'one-way' intervention, hopefully laid to rest by the 1966 Amendment to Rule 23. It would also raise serious due process questions of adjudication without participation and deprivation of the jury trial right. Furthermore, both notice after trial and notice after discovery create further due process problems by binding class members to the judgment, yet denying them the means by which they may gain information enabling them to prove up their individual claims. Finally, it should be added that deferring notice until some time after discovery is in direct contraposition to F.R.C.P. Rule 23(c) (1), which requires class determination "as soon as practicable after the commencement of an action", will prejudice those waiting upon the class action before proceeding independently, will only marginally add to the input available, and will not not render probabilities of success any more determinative.

■ Likewise, holding an evidentiary hearing would only impose an additional burden on the Court and on the parties. First of all, it stands to reason that if such a hearing is not required before class determination, it should not be required before class notice. Secondly, if held before discovery a hearing could contribute little, and after would be self-defeating and unnecessarily duplicative of trial. In neither case could it *insure* that plaintiffs would prevail, and if limited to those cases where matters were marginally frivolous, would require the same efforts to determine the threshold question of frivolity.[13] Moreover, in every case an evidentiary hearing would provide an additional discovery device not contemplated by the Federal Rules of Civil Procedure, and would raise serious questions as to the subsequent use at trial of evidence adduced in such a proceeding (i. e. impeachment, use in lieu of testimony, etc.). If given full cre-

---

13. This is not such a marginally frivolous case, nor a case where the potential class is vast and the chances of fashioning a meaningful net recovery, after deduction of class action expenses, quite slight. *Compare*, Milberg v. Western Pacific R. R. Co., 51 F.R.D. 280 (S.D.N.Y.1970) ; Eisen I and Eisen II, *supra*.

dence it might, strangely enough, prejudice potential class members by denying them notice of opportunity to appear and cross-examine at a most meaningful stage of the litigation proceedings, and would render later intervention that much more difficult. However, the Court has no intention, *sua sponte*, of opening this substantive perplexity, and will follow the majority of non-atypical cases [14] in holding that such a hearing is not required before deciding whether to send notice and upon whom the burden of notice will fall, Miller v. Mackey Intl. Inc., 452 F.2d 424 (5th Cir. 1971); City of Philadelphia v. Emhart Corp., *supra*; Berman v. Narragansett Racing Assn., *supra*; Berland v. Mack, *supra*; Fogel v. Wolfgang, 47 F.R.D. 213 (S.D.N.Y. 1969); Mersay v. First Republic Corp., 43 F.R.D. 465 (S.D.N.Y.1968). It suffices that the Court has carefully revisited the entire record herein and finds that, as noted previously in this memorandum, the complaint and answers, as well as briefs and memoranda filed on various issues all serve to indicate the serious nature of this lawsuit.

Further from the record herein, the Court at this time takes cognizance of the fact that there are 12 class representatives holding 8682 shares out of 459,174 represented (2%); that there are upwards of 200 potential class members; that the class representatives are financially responsible (including at least one former director of Guaranty and one prominent Birmingham attorney) and have given no indication that they are unable to bear the costs of notice; that defendants, by their strenuous resistance to class action determination have indicated a rather weak interest in the *res judicata* advantages thereof; that a large number of the class members herein remain stockholders of one or another of defendant corporations, from which it may be inferred that defendants communicate with them from time to time;

that the majority, indeed perhaps all, of the class members herein can, by means of defendants' records, be identified and located through reasonable effort, and that the public policies in favor of the type of action herein alleged are compelling, and ordinarily permit use of the class action device.

Finally, the Court notes that the cost of printing, stuffing and mailing a notice has been variously estimated as 10¢, *Eisen* II, *supra*, 12½¢, *Katz* II, *supra*, and 15¢, Berland v. Mack, *supra*. Thus, even assuming there are as many as 5,000 class members, taking the highest figure individual notice would cost around $750.00. In addition, the cost of a ⅛ page advertisement in the National Edition of the Wall Street Journal, a size used by brokerage houses to advertise new issues, big enough to catch the eye, in a publication specifically directed to the financial community, circulation 1,262,000, would be $4963.92, *Eisen* II, *supra*. These sums are only a small portion of the potential recovery, which could conceivably be in the millions.[15]

The question thus posed, in view of costs, is whether more expensive notice by publication would be required in addition to individual notice. This is rather the reverse of the prototypical situation where the question addressed is whether notice by publication is sufficient, or whether individual notice is required.

Here, the Court is guided both by the precepts of F.R.C.P. Rule 23(c) (2) and by applicable principles of due process. Rule 23(c) (2) provides:

In any class action maintained under subdivision (b) (3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.

14. See footnote 13, *supra*.

15. The prayer herein is for four million dollars.

Here, since most members of the class can be identified, individual notice would be required but would, due to cost factors, be provided in any event.

■ To conform to due process, notice must "fairly insure[s] the protection of the interests of absent parties who are to be bound," Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940) and must be

> reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

The means used must be not less likely to inform than other feasible substitutes. *Id. Mullane* recognizes publication as a viable substitute for persons missing and unknown. However, whether there will be any persons in this category cannot be known until individual notice is sent. If there are few or none, no publication notice will be necessary, since

> notice reasonably certain to reach most of those interested in objecting is likely to safeguard the interests of all

as objections by those present inure to the benefit and protection of those who did not receive notice. Mullane v. Central Hanover Bank & Trust Co., *supra.* If, however, it appears after notice has been sent that there is a significant number of persons in the class who remain unidentifiable or unlocatable, the Court will make such further orders as are necessary to enforce requirements and with the Rule 23 requirement that notice be the best practicable.

■ From all of the aforementioned facts and circumstances, the Court concludes that there is herein no need to discourage the class action sought, but that, on the contrary, justice and the spirit of Rule 23 would best be served by apportioning the costs of notice between the parties for the present. Naturally, however, such costs will be taxed at the

conclusion of the case to the party that does not prevail. Accordingly, after examination of the various methods of notice available, the Court is convinced that the method hereinafter set forth provides the most equitable apportionment as well as the most economical and efficient means of carrying this class action forward. Cf. Herbst v. Abel, *supra.*

Within 45 days from the date of filing herein, plaintiffs shall, at their expense, prepare a notice to the potential class. This notice must be neutral and objective in tone, and should neither promote nor discourage the assertion of claims. It will be in the name of the United States District Court for the Southern District of Iowa, but must emphasize that the Court expresses no opinion as to the merits of the lawsuit. It will be addressed to the class as described in this Order, and will describe the parties, both plaintiff and defendant, the cause of action and recovery sought, with a notation of defendants' denial and affirmative defenses, and an announcement that the issues are complicated and are not yet determined, and that discovery is ongoing.

The notice given must further warn potential members of the class of their right to be excluded therefrom, that this right must be exercised by a date certain (approximately 45 days from the date of mailing), or else any judgment entered will be binding upon them and they might be held liable for a proportionate share of costs if the action is unsuccessful, but that if exclusion is requested, any cause of action they might have may be barred by the statute of limitations. To enable exercise of the exclusion right, notice shall include a postage-paid post card addressed to the Clerk of Court, with spaces for name, address, number of shares, and request for exclusion thereon.

Notice given must further warn of the right to enter an appearance and participate in proceedings. It shall be noted that appearance may be entered at any

time by appropriate motion to the Court, setting forth the party's qualifications as a member of the class. Finally, notice must warn each member of the class that at some further point in the proceedings they will be required to submit proof of their claim, or be forever barred. Cf. Philadelphia Electric Co. v. Anaconda Amer. Brass Co., 43 F.R.D. 452 (E.D.Pa.1968). As soon as this notice to the class is drafted, plaintiffs shall submit it to the Court for approval.

Likewise within 45 days from the date of filing herein, defendants shall prepare, at their expense, a list of all former Guaranty shareholders, other than for stock held in street name, together with the last known address and number of shares held for each. This information should be readily available from stock transfer lists and other documents in their possession. Weiss v. Tenney Corp., *supra*; Berland v. Mack, *supra*. Where stock is held in street name, defendants shall compile a list of brokerages involved and shall, at their expense, mail to each a notice that the Court directs disclosure of the names of those for whom stock is held, together with their addresses and number of shares.[16] If a brokerage fails or refuses to answer, defendants may obtain subpoenas duces tecum from the Court.

As soon as the respective lists of stockholders are compiled, defendants shall provide them to plaintiffs, who shall, as soon as notice is approved, if it has not yet been submitted, or immediately, if notice has been approved, send individual notice to each person on the lists by first class mail with a "please forward" request thereon. Additionally, notice shall be sent to the Securities and Exchange Commission for such action as they deem appropriate. The return address in each case shall be that of the Clerk of Court, who shall keep count of the number of notices returned as undeliverable. Within a reasonable time thereafter, upon motion of either party, the Court will revisit this matter, as noted supra, to determine if further notice by publication in the Wall Street *Journal,* Des Moines *Register* and Birmingham *News* and *Post-Herald* would be required. At any time after initial notice, either party may furnish the class, at its expense, any information with respect to this lawsuit as is deemed appropriate, provided that they do not urge or solicit any action on the part of class members.

At some later point in the course of this matter, the Court will, upon the motion of either party, direct a second notice to the class, requiring them to fill out a proof of claim form to be supplied by plaintiffs at their expense. This form, in addition to setting forth a statement of claim, perhaps certified by the claimant's broker, shall require a statement of types and sources of representations relied on and the time that the claimant first learned of their falsity. If no proof of claim is filed, the party shall be dismissed for failure to diligently prosecute, and thereafter the class can be finally defined, allowing the parties to assess their claims prior to trial, and appropriate sub-classes established. State of Iowa v. Union Asphalt & Roadoils, Inc., 281 F.Supp. 391 (S.D.Iowa 1968); Korn v. Franchard, 50 F.R.D. 57 (S.D.N.Y.1970); Harris v. Jones, 41 F.R.D. 70 (D.Utah 1966). Cf., also, Report and Recommendation of the Special Committee on Rule 23, American College of Trial Lawyers (March 15, 1972). Since the class members have already been identified and individually notified and twice warned, no due process problems are involved. Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940).

16. Mere notice to the broker is not reasonably calculated to reach the customer. Berland v. Mack, *supra*.