Roger T. HURWITZ et al., Plaintiffs,

v.

R. B. JONES CORPORATION et al., Defendants.

No. 74CV730-W-4.

United States District Court,
W. D. Missouri, W. D.

Aug. 30, 1977.

As Modified Sept. 16, 1977.

Kent E. Whittaker, Hillix, Brewer, Hoffhaus, Grier & Whittaker, William D. Calkins, Kansas City, Mo., for plaintiffs.

Landon H. Rowland, Watson, Ess, Marshall & Enggas, Frederick Beihl, Shook, Hardy & Bacon, Phil M. Cartmell, Jr., Gage, Tucker, Hodges, Kreamer, Kelly & Varner, Kansas City, Mo., Robert L. Proost, Peper, Martin, Jensen, Maichel & Hetlage, St. Louis, Mo., for defendants.

## MEMORANDUM AND ORDER

ELMO B. HUNTER, District Judge.

This action is now before the Court on Plaintiffs' request that Count II of their Complaint be declared a class action pursuant to Rule 23, F.R.Civ.P.

The Complaint, filed December 11, 1974, contains two counts. Count I is brought as a shareholder's derivative action under Rule 23.1, F.R.Civ.P., and seeks compensatory

and equitable relief for injuries allegedly suffered by R. B. Jones Corporation as a result of conduct by defendants allegedly violative of Section 14(e) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(e), Section 10(b) of that Act, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5. In Count II, plaintiffs seek to bring a class action on behalf of themselves and those similarly situated, asking compensatory and equitable relief for injuries allegedly suffered by the class as a result of defendants' alleged violations of § 10(b), § 14(e), and Rule 10b–5. The same alleged conduct gives rise to the claims asserted in Counts I and II.

Plaintiff Hurwitz is an attorney who has practiced in the Kansas City, Missouri area continuously since his admission to the Missouri Bar in 1952. On June 30, 1972, Financial Counselors, Inc., purchased for Mr. Hurwitz 500 shares of the common stock of R. B. Jones through E. F. Hutton & Co., Inc. at a price of $22.00 per share plus commission. On December 11, 1974, plaintiff Hurwitz tendered his 500 shares pursuant to the tender offer (discussed below) and, in January, 1975, was paid $3000.00 for these shares.

On November 9, 1971, plaintiff Wohltman, a Kansas City businessman, purchased 200 shares of common stock of R. B. Jones for his wife and himself, jointly. He made the purchase through Paine, Weber, Jackson & Curtis, Inc. at a price of $16⅞ per share plus commission. On or about November 4, 1974, Mr. and Mrs. Wohltman received notice of the tender offer (discussed below), but did not tender any of their shares pursuant to the offer. They retain these shares still.

Defendants are R. B. Jones Corporation, the United Missouri Bank of Kansas City (which serves as trustee of the R. B. Jones Corporation Employee Share Ownership Trust) and various officers and directors of R. B. Jones. R. B. Jones Corporation is not named as a defendant in Count II.

Briefly, the facts which give rise to plaintiffs' claims are these: On November 1, 1974, R. B. Jones Corporation and the R. B. Jones Employee Share Ownership Trust made a joint tender offer to the shareholders of R. B. Jones Corporation to purchase, at a price of $6.00 per share, up to 500,000 shares of R. B. Jones common stock, if at least 400,000 shares were tendered on or before December 13, 1974. The offer was made by means of a 21 page document (the offering circular), identical copies of which were distributed in interstate commerce to those who were shareholders of record on October 25, 1974. The offering circular was filed with the Securities and Exchange Commission. The terms of the offer required shareholders owning 1,000 or fewer shares of R. B. Jones Corporation stock who desired to tender any shares to tender all shares owned, and required owners of more than 1,000 shares who desired to tender any shares to tender at least 1,000 shares. The offerors were not obligated to purchase more than 2,500 shares from any officer or director of R. B. Jones Corporation or its subsidiaries.

It is not necessary, at this stage of the proceedings, to detail further the facts preceding and surrounding the tender offer. Suffice it to say that plaintiffs claim that "[t]he offering circular is replete with untrue statements of material facts and contains omissions to state material facts necessary in order to make the offering circular not misleading . . ." and allege that, as a result, defendants' conduct is violative of § 10(b), § 14(e), and Rule 10b–5. Further details concerning the substantive portion of plaintiffs' claim will be given, as needed, throughout this opinion.

Plaintiffs' request that this Court declare Count II of their Complaint to be a class action will now be considered.

I

THE CLASS

On October 31, 1974:

(a) 152 of the shareholders of record of R. B. Jones Corporation common stock, owning 927,837 shares, were officers and directors of R. B. Jones Corporation or its subsidiaries;

(b) 196 of the shareholders of record of R. B. Jones Corporation common stock, owning 63,760 shares were employees, other than officers and directors, of the corporation or its subsidiaries;

(c) four shareholders of R. B. Jones Corporation common stock owning 11,141 shares were independent contractors who had contractual arrangements with R. B. Jones Corporation or a subsidiary of R. B. Jones Corporation whereby they brokered insurance business through R. B. Jones Corporation or a subsidiary of the corporation;

(d) four shareholders of R. B. Jones Corporation common stock owning 886 shares were attorneys or investment bankers for R. B. Jones Corporation;

(e) 16 shareholders of record of R. B. Jones Corporation stock owning 64,269 shares were spouses, brothers, sisters, children, fathers, or mothers of officers or directors or employees or attorneys or investment bankers of R. B. Jones Corporation or its subsidiaries.

Plaintiffs seek to include within the class 982 shareholders of record on October 31, 1974. These shareholders, as of that date, held, in the aggregate, 512,516 shares of the corporation's stock. These totals represent the total number of October 31, 1974 shareholders and shares outstanding, less those identified in paragraphs (a) through (e) above.

The parties have stipulated to the following:

(1) Of those shareholders of record of R. B. Jones Corporation common stock on October 31, 1974, approximately:

(a) 617 tendered all of the shares they owned;

(b) 633 neither tendered nor transferred any shares prior to December 14, 1974;

(c) 41 tendered some of their shares and retained others;

(d) six tendered some of their shares, transferred some of their shares, and retained some of their shares;

(e) 32 transferred, prior to December 14, 1974, all of the shares they owned;

(f) five transferred some of their shares prior to December 14, 1974 and retained others;

(g) 15 tendered, prior to December 14, 1974, some of their shares and transferred their remaining shares.

(2) Of the shareholders who tendered and who were not officers and directors, employees, investment advisors or attorneys, or independent contractors of R. B. Jones Corporation or its subsidiaries, or relatives of such persons, a minimum of 370 tendered all the shares they owned.

(3) Of the 574,140 shares which were tendered, 181,620, or 31.6%, were tendered by shareholders who are excluded from the class as defined by plaintiffs; and 124,567 shares, or 21.7%, were tendered by retired employees of R. B. Jones Corporation who plaintiffs seek to include in the class.

(4) 315 tendering shareholders are excluded from the class by plaintiffs' definition; only eleven individual shareholders of record as of October 31, 1974, have been named defendants.

(5) The class as defined by plaintiffs excludes 372, or 27.5%, of all persons who were stockholders on October 31, 1974.

(6) The class as defined by plaintiffs excludes the record stockholders, as of October 31, 1974, of 1,067,893 shares, or 67.5% of all shares then outstanding.

The Court is satisfied that plaintiffs have defined their class with reasonable particularity. Therefore, the Court will now examine whether the class, as so defined, may properly be certified under Rule 23.

## II

## RULE 23(a)(1): THE NUMEROSITY REQUIREMENT

Rule 23(a)(1) provides: "One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members in impracticable . . . ."

Defendant admits,[1] and this Court finds, that this requirement has been met by plaintiffs.

## III

### RULE 23(a)(2): THE COMMONALITY REQUIREMENT

■ Rule 23(a)(2) provides: "One or more members of a class may sue or be sued as representative parties on behalf of all only if (2) there are questions of law or fact common to the class . . ." Clearly, this requirement has been satisfied. Each class member, by definition, was a shareholder of the same corporation at the time that the transaction, which is claimed to have injured them, was carried out. Each received identical documents soliciting tenders of their stock. Plaintiffs claim that these documents were misleading, primarily by reason of their failure to disclose material information concerning the tender offer. This tender offer is alleged to be an essential link in a fraudulent scheme that injured each class member. The proof of liability of the defendants to each class member will, therefore, be established by common proof and by the resolution of common questions of law, e. g., whether defendants violated Section 10(b) or Section 14(e) of the Act or Rule 10b–5 by their carrying out the above-described transactions. Clearly, the requirements of Rule 23(a)(2) have been met. *See Epstein v. Weiss*, 50 F.R.D. 387, 390 (E.D.La.1970).

## IV

### RULE 23(a)(3) & (4): THE TYPICALITY AND ADEQUACY REQUIREMENTS

Rule 23(a)(3) and (4) provide: "One or more members of a class may sue or be sued as representative parties on behalf of all only if (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

Referring to these provisions, Professor Moore has observed:

> The (a)(3) requirement that claims or defenses be "typical" has been equated with the (a)(4) requirement that the representative party must adequately represent the class, or with one of the elements usually considered as part of the adequacy requirement, i. e., that the interest of the representative party must be coextensive with the interests of the other members of the class, and that there be a lack of adverse interests between the representative party and other members of the class. 3B Moore's Federal Practice ¶ 23.-06–2, p. 23–325 (1977).

He concludes: "In fact, there is no need for [the typicality] clause, since all meanings attributable to it duplicate requirements prescribed by other provisions in Rule 23." *Id.*

While this Court is not prepared to declare the typicality requirement of Rule 23 entirely redundant and thus of no value, we do recognize a great deal of overlap in the typicality requirement of (a)(3) and the adequacy requirement of (a)(4). Therefore, rather than engage in strained distinctions and "pigeon-hole" analysis, discussion of the application of subsections (a)(3) and (a)(4) to this case will be merged.

The major issues of the case emanating from the adequacy and typicality clauses of Rule 23 center on these areas:

### A.

#### *Reliance*

Defendants contend that neither plaintiffs Hurwitz nor Wohltman subjectively relied on the allegedly false and misleading statements in the offering circular in deciding whether to tender their shares. Thus, defendants conclude that their claims "are not typical of the claims of those shareholders who relied on the allegedly false and misleading statements in the offering circular."[2] Plaintiffs, citing *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 96 S.Ct.

---

1. Defendants' Brief, p. 7 (Jan. 21, 1977).

2. Defendants' Brief, p. 9 (Jan. 21, 1977).

2126, 48 L.Ed.2d 757 (1976); *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972); *Chris-Craft Industries, Inc. v. Piper Aircraft Co.*, 480 F.2d 381 (2d Cir. 1973), *on remand*, 384 F.Supp. 507 (S.D.N.Y.1974), *aff'd in part, rev'd in part*, 516 F.2d 172 (2d Cir. 1975), *rev'd*, 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977), and *Herbst v. International Telephone and Telegraph Co.*, 495 F.2d 1308 (2d Cir. 1974), argue that proof of subjective reliance is unnecessary under either § 14(e) or Rule 10b–5. Defendants, citing *Ehrler v. Kellwood Co.*, 521 F.2d 1347, 1350 (8th Cir. 1975); *Harris v. American Investment Co.*, 523 F.2d 220, 229 n. 7 (8th Cir. 1975); *S. E. C. v. First American Bank and Trust Co.*, 481 F.2d 673, 681 n. 27 (8th Cir. 1973); *Myzel v. Fields*, 386 F.2d 718, 735 (8th Cir. 1967), and *Neuman v. Electronic Specialty Co.*, CCH Fed.Sec.L.Rep. ¶ 92,591 (N.D.Ill.1969), argue that such proof is essential to the maintenance of a cause of action under either § 14(e) or Rule 10b–5.

Before addressing these contentions, it should be made clear at the outset that there are two distinct aspects to the reliance issue as it relates to the class certification question in this case. First, there are the arguments by defendant that (a) subjective reliance is an essential element in any § 14(e) or Rule 10b–5 action, and (b) neither Hurwitz nor Wohltman is capable of personally demonstrating such subjective reliance. Second, defendants argue that, because they intend to carefully and thoroughly question each class member as to his own subjective reliance, this case is not amenable to class action treatment. It is the opinion of this Court that defendants' first argument relates to whether the claims of Hurwitz and Wohltman are typi-

cal of those of the class (Rule 23(a)(3)) and to the adequacy of Hurwitz and Wohltman's representation of the class (Rule 23(a)(4)). These issues will, therefore, be addressed in this portion of the Opinion. Defendants' second argument, however, is more ·appropriately treated in the discussion, under Rule 23(b)(3), of whether common questions or individual questions predominate in the case.

The typicality and adequacy aspects of the reliance issue will now be discussed.

■ Whether plaintiffs Hurwitz or Wohltman subjectively relied on defendants' allegedly fraudulent misrepresentations and omissions in deciding whether to tender his shares, and whether such subjective reliance is an essential element of a § 14(e) or Rule 10b–5 claim are complex questions which go not to plaintiffs' standing to assert the Count II claims, but, rather, involve a consideration of the merits of their individual claims. As such, a determination of what role, if any, subjective reliance plays in actions brought under § 14(e) and Rule 10b–5, need not now be made. In deciding whether to certify a class, the Court must not require plaintiffs to establish the merits of their substantive claims or a likelihood of prevailing on those claims. *Eisen v. Carlisle and Jacqueline*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Chmieleski v. City Products Corporation*, 71 F.R.D. 118, 127 (W.D.Mo.1976). The distinction between identifying the issues that the case will present, for purposes of determining whether the requirements of Rule 23 have been met, and deciding those issues is a fine, but definite, one, and has been variously expressed by the courts.[3]

---

**3.** "It is now firmly established that plaintiffs in a class action brought under Rule 23 are not to be required to establish the merits of their substantive claims or a likelihood of prevailing on those claims in order to maintain the claims as a class action. . . . However, because the requirements of Rule 23, F.R.Civ.P. involve determinations of commonality and typicality of claims, it is necessary to an appropriate determination of a Rule 23 motion that the Court analyze the substantive claims and defenses of the parties, the essential elements

necessary to establish those claims, and the elements involved in the defenses which are likely to be asserted." *Chmieleski v. City Products Corporation*, 71 F.R.D. 118, 127 (W.D.Mo. 1976).

"Although we recognize that the determination of whether there is a proper class does not depend on the existence of a cause of action, . . . identification of the issues that would be presented at trial is essential in analyzing the appropriateness of a class certification, and in applying the standards of Rule 23." *Wilen-*

■ While class actions should not be certified where "the representative parties clearly have no litigable claim to present to the Court for relief," *Vietnam Veterans Against the War v. Benecke*, 63 F.R.D. 675, 684 (W.D.Mo.1974), this Court is not prepared to so classify the claims of plaintiffs Hurwitz and Wohltman. While, in some cases, "it is necessary to an appropriate determination of a Rule 23 motion that the Court analyze the substantive claims and defenses of the parties . . . [and] *the essential elements necessary to establish those claims*," *Chmieleski v. City Products Corporation*, 71 F.R.D. 118, 127 (W.D.Mo. 1976) [emphasis added], where, as here, the litigation will focus, to a large degree, on defining precisely what does constitute the essential elements of § 14(e) and Rule 10b–5 claims, this Court feels it to be premature to declare the elements of those claims at this time. This result seems particularly compelling in view of the economies toward which Rule 23 strives. To rule on the reliance issue after the class has been certified and after that issue has been fully briefed, would seem a desirable way to bind the greatest number of persons in the most judicially-efficient manner. If, as defendants claim, neither Hurwitz nor Wohltman subjectively relied on defendants' representations and omissions, this Court is assured that the class will be most vigorously represented in the litigation pertaining to this issue.

Defendants, however, direct the Court's attention to *Koos v. First National Bank of Peoria*, 496 F.2d 1162, 1165 (7th Cir. 1974), which states:

[R]epresentative plaintiffs should not be distracted by a relatively unique personal defense. To the extent there are significant issues affecting only part of the class, the named representative should be in the larger part of the class.

See also, *Blankner v. City of Chicago*, 504 F.2d 1037, 1043 (7th Cir. 1974).

■ However, as plaintiffs point out, "there is nothing 'unique' about a defense of lack of reliance. If it is an issue as defendants contend, it is one that applies to each class member." [4] We agree with plaintiffs that the reliance issue does not make the claims of plaintiffs Hurwitz and Wohltman atypical of the class; nor does it render them inadequate representatives of the class.

■ Further, it must be remembered that, in engaging in (a)(3) and (a)(4) analysis, we are not concerned with whether plaintiffs' claims are identical with those of all members of the class; rather, we are concerned with whether "there are real or potential conflicts within [the] class, or if the interests of the representatives are sufficiently distinct from the remainder to preclude typicality and adequate protection of the class." *Lamb v. United Security Life Co.*, 59 F.R.D. 25, 29 (S.D.Ia.1972). Nor should we require "the allegations of the class [to] fit together like pieces of a jigsaw puzzle." *Green v. Wolf Corporation*, 406 F.2d 291, 300 (2d Cir. 1968). Because the presence or absence of subjective reliance is a matter which, if an issue at all in § 14(e)

*sky v. Olympic Airways, S. A.*, 73 F.R.D. 473, 476 (E.D.Pa.1977).

"The law is well settled that a court should not conduct a preliminary inquiry into the merits of a suit to determine whether it may be maintained as a class action. . . . However, a preliminary hearing addressed not to the merits of plaintiff's individual claim but to whether she is asserting a claim which, assuming its merit, will satisfy the requirements of Rule 23 has never been regarded as violative of the rule stated in *Eisen* (supra)." *Cobb v. Avon Products, Inc.*, 71 F.R.D. 652, 654 (W.D. Pa.1976).

"A decision on whether the specific criteria of Rule 23(a)(4) have been met may not rest on

the court's prospective view of the case's merits. . . . However, a court may consider whatever information exists in the record relating to the four threshold requisites for class certification." *Aiello v. City of Wilmington, Delaware*, 426 F.Supp. 1272, 1282 (D.Del.1976).

"[A] preliminary hearing, addressed not to the *merits* of plaintiff's individual claim, but to whether he is asserting a claim which, *assuming its merit*, will satisfy the requirements of Rule 23, has never been regarded as violative of the rule stated in *Eisen*, quoted *supra*." *Doctor v. Seaboard Coast Line R. Co.*, 540 F.2d 699, 707 (4th Cir. 1976) [emphasis in the original].

4. Plaintiffs' Brief, p. 25 (Dec. 17, 1975).

or Rule 10b–5 cases (a question on which we express no opinion), applies to each class member, because plaintiffs Hurwitz and Wohltman have done nothing thus far to prejudice the rights of either the relying or non-relying members of the class,[5] and because the many judicial efficiencies at which Rule 23 is aimed may best be served by deciding, on the merits after the class is certified, whether subjective reliance is an element in claims based upon § 14(e) and Rule 10b–5, this Court is not, at this time, prepared to declare Hurwitz and Wohltman inadequate or atypical representatives of the proposed class on the basis of defendants' reliance argument. While recognizing that, if the interests of the representatives are antagonistic to the interests of the persons they purport to represent, they cannot maintain their action as a class suit, *Hansberry v. Lee*, 311 U.S. 32, 44–45, 61 S.Ct. 115, 85 L.Ed. 22 (1940), "[t]he Court is here satisfied that potential conflict is minimal and is far overbourne by the common course of fraud and misrepresentation alleged in the complaint." *Lamb, supra*, at 29. The reliance issue, therefore, does not cause plaintiffs to fail to meet the requirements of 23(a)(3) and 23(a)(4).

## B.

### STANDING

While the reliance issue goes to the merits of plaintiffs' securities fraud claims and is thus not to be considered in determining whether the claims may properly be brought as a class action, the standing of plaintiffs Hurwitz and Wohltman, as individuals, to assert the claims contained in Count II of the Complaint must now be considered for, as stated in *Weiner v. Bank*

*of King of Prussia*, 358 F.Supp. 684, 695 (E.D.Pa.1973):

> The plaintiff's standing to bring an action against each defendant named in the Complaint must be established independently of Federal Rule of Civil Procedure 23. Only then is the plaintiff in a position to represent others having similar claims against those same defendants.[6]

A consideration of the standing of plaintiffs Hurwitz and Wohltman to assert the claims contained in Count II of the Complaint is, therefore, now in order.

### The 10b–5 Claim

■ It cannot be disputed that "one asserting a claim for damages based on the violation of Rule 10b–5 must be either a purchaser or seller of securities." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 749, 95 S.Ct. 1917, 1932, 44 L.Ed.2d 539, 557 (1975). Further, the parties do not dispute the fact that plaintiff Wohltman did not sell any of his shares of stock as a result of any of defendants' activities relevant to this action. It is, therefore, evident that plaintiff Wohltman lacks standing under Rule 10b–5 and is thus unable to represent those members of the class who did sell their shares pursuant to the tender offer. As stated in *Greenstein v. Paul*, 275 F.Supp. 604, 605 (S.D.N.Y.1967):

> Hence, if it is essential to the maintenance of an action for damages under Section 10(b) and Rule 10b–5 that plaintiff be a seller of the stock, plaintiff may not maintain this action on his own individual behalf. And if he has no standing to sue on his own account, he may not maintain a class action on behalf of those stockholders who did sell their stock, be-

---

**5.** Indeed, plaintiffs have protected the interests of the class members thus far. In Count II, ¶ 7 of the Complaint, it is alleged that defendants' "material misrepresentations and omissions of material facts . . . were relied on by certain class members thereby causing the class members to suffer damages in an amount that is not presently ascertainable." Thus, even if plaintiffs were found not to have met the reliance requirements individually, they have, by their pleadings, protected the rights of all relying class members.

**6.** *See also DiJulio v. Digicon, Inc.*, 339 F.Supp. 1284, 1292–93 (D.Md.1972), where the court stated: "A party who lacks standing to sue on his own behalf may not assert claims on behalf of an alleged class of which he is not a member. . . . This rule applies to actions arising under the Securities Acts. . . ."

cause plaintiff is not a member of the class.[7]

The same analysis operates to deny standing to plaintiff Hurwitz (who *did* sell his shares pursuant to the tender offer) to represent, in the Rule 10b–5 claim, those members of the class who did not sell.

### The § 14(e) Claim

■ It has been generally held that the purchaser-seller standing requirement imposed by *Blue Chip* does not apply to claims brought under § 14(e). In *Smallwood v. Pearl Brewing Co.*, 489 F.2d 579, 596 (5th Cir. 1974), the Court stated:

> To charge violations of Section 14(e) in federal court a private plaintiff need not be a purchaser or a seller of any securities, as he must be to sue under Rule 10b–5. This is the primary contribution of the Williams Act to the antifraud arsenal; under Section 14(e) a plaintiff may gain standing if he has been injured by fraudulent activities of others perpetrated in connection with a tender offer, whether or not he has tendered his shares.[8]

As concluded by the Court in *Wulc v. Gulf & Western Industries, Inc.*, 400 F.Supp. 99, 104, n. 1 (E.D.Pa.1975): "[A] shareholder of the target corporation . . . has standing to sue [under § 14(e)] whether shares are tendered or not." As succinctly stated by the Court in *Petersen v. Federated Development Co.*, 416 F.Supp. 466, 472, n. 2 (S.D.N.Y.1976): "As a non-tendering shareholder, plaintiff has standing to assert a damage claim against defendants for violation of Section 14(e)."

A good summary of the lower court decisions dealing with standing in § 14(e) cases is contained in *Sargent v. Genesco, Inc.*, 492 F.2d 750, 769 (5th Cir. 1974), where the Court stated:

In determining who has standing to sue under 14(e), the quest has been for what will best further the objective of the statute. Consequently, the right to bring suit has not been limited to tendering offerees only but has been extended to numerous other parties who claimed to be victims of 14(e) violations. *See Chris-Craft Industries, Inc. v. Piper Aircraft Corp.*, 480 F.2d 341 (2d Cir. 1973) (tender offeror had standing to sue target company's management and competing offeror); *Electronic Specialty Company v. International Controls Corp.*, 409 F.2d 937 (2d Cir. 1969) (target company and target company's non-tendering shareholders had standing to sue for injunctive relief); *H. K. Porter, Inc. v. Nicholson File, Co.*, 482 F.2d 421 (1st Cir. 1971) (tender offeror had standing to sue target company's management); *see also Gulf and Western Industries, Inc. v. Great Atlantic and Pacific Tea Company*, 476 F.2d 687 (2d Cir. 1973); *but see Washburn v. Madison Square Garden Corp.*, 340 F.Supp. 504 (S.D.N.Y.1972).

While the Supreme Court has expressly reserved its judgment on the question whether "shareholders, who might not enjoy the protection of § 10(b) under *Blue Chip Stamps v. Manor Drug Stores*, supra, could perhaps state a claim under § 14(e), even though they did not tender their securities," *Piper v. Chris-Craft Industries, Inc.*, 430 U.S. 1, 38–39, 97 S.Ct. 926, 948, 51 L.Ed.2d 124, 151, fn. 25 (1977), it has ruled that a defeated takeover bidder has no standing to assert claims under § 14(e). *Id.*, at 39, 97 S.Ct. at 948, 51 L.Ed.2d at 151–152. The Court reasoned:

> But increased protection, if any, conferred upon the class of shareholders-of-ferees by the elimination of the purchaser-seller restriction can scarcely be inter-

---

7. *See also Chashin v. Mencher*, 255 F.Supp. 545, 548 (S.D.N.Y.1965) where the court stated: "The second amended complaint herein fails to place plaintiff in the category of a defrauded seller or purchaser and it is, therefore, fatally deficient. . . . Plaintiff cannot cure this defect by claiming that she is suing representatively."

8. Although *Smallwood* was decided before *Blue Chip*, the Fifth Circuit had, as indicated in the quotation, already adopted the purchaser-seller standing requirement in Rule 10b–5 cases. *See Wolf v. Frank*, 477 F.2d 467, 478 (5th Cir. 1973); *Cooper v. Garza*, 431 F.2d 578, 580 (5th Cir. 1970); *Herpich v. Wallace*, 430 F.2d 792, 806 (5th Cir. 1970).

preted as giving protection to the entirely separate and unrelated class of persons whose conduct the statute is designed to regulate.

*Id.*, at 39, 97 S.Ct. at 948, 51 L.Ed.2d at 151–152. Plainly, plaintiff Wohltman is not a member of the latter class; rather, as a non-tendering offeree, he is, in this Court's judgment, a member of the class which § 14(e) was designed to protect: a class of persons to whom the protection of Rule 10b–5 would not extend.

 The weight of authority and reason compels this Court to conclude that plaintiff Wohltman, despite his failure to tender or otherwise sell his shares in response to the R. B. Jones tender offer, does have standing, as an individual, to assert his § 14(e) claims against defendant.[9] Therefore, the reasoning employed by the cases denying standing as a class representative to one who asserts a 10b–5 claim but has neither purchased nor sold shares as a result of defendants' acts or omissions, would not operate to deny plaintiff Wohltman standing to assert, as class representative, the § 14(e) claims of Count II.

*The Interrelationship of Rule 10b–5 and § 14(e)*

Plaintiff Hurwitz meets the purchaser-seller requirement of *Blue Chip* and thus has standing to assert, as class representative, the Rule 10b–5 claims contained in Count II. That he also has standing to assert, as class representative, the § 14(e) claims contained in that Count is clear. Plaintiff Wohltman, however, fails to meet the purchaser-seller requirement of *Blue Chip* and is thus rendered an "inadequate" representative to assert the Rule 10b–5 claims of Count II on behalf of the class. *Greenstein v. Paul, supra,* at 605. Wohltman does, however, have standing to assert

his individual § 14(e) claims against defendants and, therefore, may still be considered an adequate representative to assert those § 14(e) claims on behalf of the class.

Normally, this situation would be cause for substantial concern, with serious consideration being given to the feasibility of splitting the class to mirror the respective interests and rights of its representatives. However, this Court feels that such concern would be premature.

 While Count II asserts plaintiffs' rights under both § 14(e) and Rule 10b–5, "the underlying proscription of § 14(e) is virtually identical to that of Rule 10b–5; the critical difference is that the latter is applicable only 'in connection with the purchase or sale of any security', while the former is applicable 'in connection with any tender offer . . . or any solicitation of security holders in opposition to . . any such offer . . .' In determining whether § 14(e) violations were committed in the instant case, we shall follow the principles developed under Rule 10b–5 regarding the elements of such violations." *Chris-Craft Industries, Inc. v. Piper Aircraft Corp.,* 480 F.2d 341, 362 (2d Cir. 1973), *on remand,* 384 F.Supp. 507 (S.D.N.Y.1974), *aff'd in part, rev'd in part,* 516 F.2d 172 (2d Cir. 1975), *rev'd on other grounds,* 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977). This being the case, it would elevate form over substance to unduly concern ourselves, at this class action certification stage of the proceedings, with the fact that plaintiff Wohltman has no standing to assert any Rule 10b–5 claim because of his failure to comply with the purchaser-seller requirement of *Blue Chip.* His § 14(e) claim, encompassing as it does all the elements of the 10b–5 claim, insures that his not having standing to assert the 10b–5 claim will render him neither an inadequate representa-

---

**9.** Nor are we persuaded by defendants' argument that the exclusive remedy for violations of § 14(e) is to be found in § 18 of the 1934 Act, 15 U.S.C. § 78r and that plaintiff Wohltman lacks standing under § 18. The Courts which have considered the issue have implied a reme-

dy directly under § 14(e), e. g., *Sargent v. Genesco, Inc., supra,* at 769 and *Smallwood, supra,* at 596, n. 20, and have refused to apply to that remedy the purchaser-seller strictures of Rule 10b–5.

tive of the class nor a representative with claims atypical of the class.[10]

### C.

*Antagonism Between Those Members of the Class Who Tendered Their Shares and Those Who Did Not*

Defendants contend that the interests of those shareholders who tendered their shares in response to the tender offer and the interests of those who did not tender their shares "are significantly different; indeed, in several respects they are mutually antagonistic."[11] For purposes of analysis, defendants break down these "antagonistic interests" thus:

1. "It would be in the interests of the selling shareholders to assert that they were induced by [the allegedly false and misleading statements in the offering circular] to *sell* their shares. But it would be in the interests of the non-selling shareholders to contend that they were induced by those same statements to *retain* their shares."[12]

2. "Even if the non-selling shareholders could state a claim under Section 14(e), the measure of damages applicable to one group is different from that applicable to the other."[13]

3. "The tendering shareholders all received a letter advising them of the initiation of this lawsuit and offering to let them withdraw their tendered shares. Those who did not accept that offer may be es-topped to seek now to recover damages in excess of the tender price. But that estoppel does not apply to the non-tendering shareholders."[14]

4. "The selling shareholders can sue under Rule 10b–5 while the non-selling shareholders cannot."[15]

5. "Many of those who did not tender their shares are still shareholders of R. B. Jones Corporation. As shareholders they would benefit from any recovery on behalf of the corporation on the derivative claims asserted in Count I. But the other members of the proposed classes—those who tendered their shares and are no longer shareholders—would not benefit from any recovery on behalf of the corporation. On the contrary, they might well be seriously prejudiced by such a recovery; it would deplete the total assets of the defendants available to satisfy a judgment on the class action claims."[16]

Defendants' contentions 1, 2 and 3 will now be considered, contentions 4 and 5 being treated elsewhere in this Opinion.[17]

Contention One:

Defendants argue that, because it would be in the interests of the tendering shareholders to assert that they were induced by defendants' representations to sell their shares while it would be in the interests of the non-tendering shareholders to assert that they were induced by those same representations to retain their shares, such a

---

10. Plaintiffs also argue that the *Blue Chip* purchaser-seller rule applies only where an action at law for damages is brought under Rule 10b–5. Because a portion of their prayer in Count II seeks equitable relief, plaintiffs contend that the purchaser-seller rule does not apply. Because of this Court's disposition of this issue, we need not decide the issue. However, we do note the Third Circuit's holding that the purchaser-seller rule applies to *all* 10b–5 cases involving "consummated illegal stock transaction[s]."
The Court left open the possibility that the purchaser-seller requirement enunciated in *Blue Chip* may not apply "where only injunctive relief is sought to prevent incipient 10b–5 violations." *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187, 194–95 (3d Cir. 1976).

11. Defendant's Brief, p. 66 (Dec. 1, 1975).

12. *Id.*, at p. 67.

13. *Id.*, at pp. 67–68.

14. *Id.*, at p. 68.

15. *Id.*, at p. 67. This argument is discussed by the Court in that portion of the Opinion dealing with standing, *supra*, and therefore will not be treated here.

16. Defendants' Brief, p. 67 (Dec. 1, 1975).

17. Contention Four is discussed in that portion of this Opinion devoted to the standing issue, *supra*. Contention is discussed in that portion of the Opinion dealing with defendants' contention that Counts I and II conflict, *infra*.

conflict exists as to militate against class action certification. We disagree.

 It must be remembered that § 14(e) protects "those security holders to whom the [tender] offer is addressed." *Sargent v. Genesco, Inc.*, 492 F.2d 750, 769 (5th Cir. 1974). Further, it must be remembered that the "policy of § 14(e) and the overriding purpose behind it is the protection of the investing shareholder who must make an informed investment decision from the data contained in the tender offer." *Wulc v. Gulf & Western Industries, Inc.*, 400 F.Supp. 99, 104 (E.D.Pa.1975). Certainly, those who made an investment decision not to tender based upon defendants' allegedly fraudulent representations and omissions and those who made a contrary investment decision based upon those same representations and omissions, are protected equally by § 14(e). Clearly, both have standing to assert § 14(e) claims.[18] Should it prove necessary for each class member to show his subjective reliance on those representations and omissions, defendants' argument of conflict between the interests of class members is not furthered, for different responses to the same stimulus is, by definition, inherent in the concept of *subjective* reliance. Should it prove necessary for each class member to show both subjective reliance and reasonable reliance, defendants' argument is still without merit, for it is certainly not unusual for two persons to react reasonably, but differently, to the same stimulus. Thus, only differences, not conflicts, have been shown to exist among the various class members. These differences do not appear to be of such magnitude to warrant denial of class certification.

 Assuming subjective reliance to be at issue in § 14(e) or Rule 10b–5 cases, that defendants' plan to make extensive inquiry into each class member's subjective reliance does not warrant denial of class certification. *See* discussion of reliance, pp. 9–15, *supra*, pp. 40–45 *infra*.

**Contention Two:**

Defendants argue that "[e]ven if the non-selling shareholders could state a claim under Section 14(e), the measure of damages applicable to one group is different from that applicable to the other."[19] Defendants are, of course, correct. The prayer contained in Count II asks, *inter alia*, that

damages be assessed against the individual defendants, jointly and severally, in favor of the class members in an indeterminate amount, representing in the case of the non-tendering class members, the difference in value between the value of the shares held by them and what that value would have been but for the conspiracy and fraudulent scheme and deceptive acts of the individual defendants, and representing, in the case of tendering shareholders, the difference in value between $6.00 per share and what the value of the shares would have been but for the conspiracy and fraudulent scheme and deceptive acts of the individual defendants.

Further, in Plaintiffs' Proposed Findings of Fact, ¶ 224, plaintiffs state that, in Count II, the relief they seek on behalf of the class includes

damages on behalf of the public shareholders of the company equaling, in the case of shares tendered by class members who do not elect to rescind, the difference between $6.00 and the actual value of their shares [at the time of the tender offer; *see* Plaintiffs' Proposed Findings of Fact, ¶ 285], and in the case of shares not tendered, the difference in the value of those shares at the time of trial from what that value would have been but for the transaction complained of in the complaint.

It is therefore clear that it is in the interests of all members of the class, tenderers and non-tenderers alike, to prove that, but for the allegedly fraudulent acts and omissions of defendants, the value of their shares of stock would be worth substantial-

---

**18.** *See* the discussion of the § 14(e) claim, pp. 17–20, *supra*.

**19.** Defendants' Brief, pp. 67–68 (Dec. 1, 1975).

ly more than they are presently worth (in the case of non-tendering members of the class) or that they were worth more than the $6.00 paid by the corporation (in the case of the tendering members of the class). A difference, but not a conflict, exists.

 Defendants attempt to create a conflict by arguing: "If, indeed, the shares of the tendering shareholders were purchased at less than fair value, the benefit of that bargain went primarily to the corporation. . . . And, of course, the non-tendering plaintiffs as shareholders benefitted from any such bargain purchase by the corporation. Consequently, on the question of the amount by which the value of the shares exceeded the tender price, the interest of the non-tenderers is diametrically and mathematically opposed to the interest of the tenderers."[20] This "conflict" is, in the opinion of the Court, more academic than real. The real financial stake which the non-tendering members of the class have in reducing the amount by which the value of the shares exceeded the tender price is attenuated at best. This is particularly so when one considers plaintiffs' allegations that the individual defendants have conspired, schemed, and defrauded to enhance their personal positions, all at the expense of the corporation and its shareholders. This being the thrust of plaintiffs' complaint, it is difficult for the Court to give serious weight to defendants' argument that it is in the real financial interests of the non-tenderers to see the corporation make a bargain purchase. Defendants' argument is rejected.

Contention Three:

Defendants argue that those members of the class who tendered their shares received a letter offering them the option of withdrawing their tendered shares. Therefore, defendants will argue that those who failed to exercise that option will be subject to defenses of waiver and estoppel. This defense would not, of course, apply to the non-tendering shareholders.

 It is this Court's opinion that, as the prospect of a waiver or estoppel defense against those who tendered their shares causes there to be merely differences, but not conflicts, between members of the proposed class, and as the representatives of the class include both a tenderer and a non-tenderer, the typicality and adequacy requirements of 23(a)(3) and (4) are not defeated by such a defense.

### D.

### The "Financial Adequacy" of the Named Plaintiffs

Defendants argue:

The members of the proposed class cannot be adequately represented if the litigation is inadequately financed. Adequate financing requires that the plaintiffs have the necessary financial resources and that they be willing to commit those resources to the representation of the class.[21]

Defendants then assert that plaintiffs have not met the burden of showing the adequacy of their finances to carry this litigation, as a class action, through to its proper conclusion.

 While the courts are split on the propriety of making inquiry into the financial resources of a plaintiff for the purpose of ascertaining his adequacy to represent the class,[22] this Court is satisfied that,

---

**20.** Defendants' Brief, p. 18 (Jan. 21, 1977).

**21.** Defendants' Brief, p. 64 (Dec. 1, 1975).

**22.** "In order adequately and fairly to represent the interests of the class, the named plaintiffs must sustain the burden of showing that their resources are adequate to pursue this lawsuit to completion, even in the absence of any additional financial contributions from members of the purported class." *Ralston v. Volkswagen-*

*werk, A. G.,* 61 F.R.D. 427, 433 (W.D.Mo.1973); "In *Gonzales v. Cassidy,* 474 F.2d 67 (5th Cir. 1973), . . . the Court noted that one of the requirements of 23(a)(4) is that 'it must appear that the representative will vigorously prosecute the interests of the class through qualified counsel.' 474 F.2d at 72. The financial means of the representative bearing as it does on the vigor of the prosecution, becomes an important area of inquiry for the Court." *P. D. Q., Inc. of Miami v. Nissan Motor Corpora-*

should the law require the named plaintiffs to make such a showing as a condition to class certification, plaintiffs Hurwitz and Wohltman have fulfilled that condition. Pursuant to a Protective Order issued by the Court on May 28, 1975, Hurwitz and Wohltman, on June 12, 1975, filed their personal financial statements with the Court. Upon a careful consideration of these statements and the size of the class which plaintiffs seek to have certified, this Court is firmly convinced that the financial resources of these two plaintiffs are clearly sufficient to allow them to "adequately" handle this litigation as class representatives.

### E.

#### The Alleged Conflict Between Counts I and II

As previously stated, plaintiffs' action is in two counts. Count I is a derivative claim, brought on behalf of the corporation, against certain directors and officers. Count II is a claim brought on behalf of plaintiffs, and those similarly situated, against those same directors and officers. The same conduct is alleged to give rise to the claims asserted in Counts I and II. Defendants argue that (1) R. B. Jones Corporation is highly solvent and it would be in the interests of the class to join such a highly solvent entity as a defendant; (2) plaintiffs have failed to join R. B. Jones Corporation as a defendant because, to do so, would create a conflict between Counts I and II; (3) plaintiffs "would have had no reason not to assert the class action claims against the corporate defendant if they had not also been asserting a derivative claim;"[23] (4) plaintiffs are thereby rendered less than adequate representatives of the class.

If plaintiffs had asserted a derivative claim on behalf of the corporation and simultaneously asserted a class claim against it, there is a strong likelihood that the conflict would preclude adequate representation. *See Stull v. Baker*, 410 F.Supp. 1326, 1336–37 (S.D.N.Y.1976). Plaintiffs, however, have framed their Complaint in such a way as to avoid this conflict. The question, therefore, becomes this: Have plaintiffs, in making their tactical decision not to name the corporation as a party defendant, prejudiced the class, thus rendering them less than adequate representatives of the class? After reviewing the net worths of the individual defendants, submitted in camera to the Court on July 20, 1976, this Court is satisfied that those defendants will be more than able to pay any judgment that might be rendered against them under Counts I and II. This being the case, any prejudice resulting to the class is more illusory than real. As a result, plaintiffs' adequacy as representatives of the class is not thereby diminished.

tion *In U. S. A.*, 61 F.R.D. 372, 377, n. 5 (S.D. Fla.1973).

For a contrary view, *see Sanderson v. Winner*, 507 F.2d 477, 479–80 (10th Cir. 1974), where the Court stated: "Defendants considered it important to ascertain whether plaintiffs were able to pay *all* of the costs in the litigation including extensive depositions. We fail to see relevancy in these inquiries particularly with respect to *in limine* inquiry as to whether a class action is to be allowed. Ordinarily courts do not inquire into the financial responsibility of litigants. We generally eschew the question whether litigants are rich or poor. Instead, we address ourselves to the merits of the litigation.[3] [footnote 3: "Federal judges take an oath to 'administer justice without respect to persons, and do equal right to the poor and to the rich.' "] We recognize that the class action is unique and we see the necessity for the court to be satisfied that the plaintiff or plaintiffs can pay the notice costs . . . We are aware that some lower court decisions have considered the plaintiff's ability to pay as relevant and proper in the present context. [citing *Ralston* and *P. D. Q., supra* ]. However, in both of these cases in which antitrust violations were alleged, the plaintiffs sought to represent a class of all new car purchasers in the United States." *See also Sayre v. Abraham Lincoln Federal Savings & Loan Ass'n*, 65 F.R.D. 379, 384–85 (E.D.Pa.1974).

**23.** Defendants' Brief, p. 23 (Jan. 21, 1977).

## F.

*Is Plaintiff Hurwitz Operating Under a Conflict Of Interest Sufficient to Render Him An Inadequate Representative of the Class?*

Defendants argue that because "plaintiff Hurwitz has in the past acted as a lawyer for the defendant Metzler," because "[i]n the course of the representation, Mr. Hurwitz received from Mr. Metzler information about the size and nature of his assets, his net worth, his holdings of R. B. Jones Corporation common stock, the value of those holdings, his income, the fringe benefits he received from R. B. Jones Corporation, and other matters," because "[p]roffesional ethics impose restrictions on the use that Mr. Hurwitz may make or permit to be made of this information even if that same information is available from other sources," because "Mr. Hurwitz recognizes those restrictions and testified that he intends to observe them," and because "the observance of those restrictions may well operate to the prejudice of the class," Mr. Hurwitz is rendered an inadequate representative of that class.[24]

The record shows that, as attorney for Mr. Metzler, Mr. Hurwitz was involved in two estate planning assignments, one in 1967–68, the other in 1971–72. His file contained a financial statement showing Mr. Metzler's net worth and also indicating that Mr. Metzler's largest single asset was his block of common stock of R. B. Jones. The file also indicated the value of Mr. Metzler's holdings in R. B. Jones and made a reference to a stock purchase plan whereby Mr. Metzler, as an employee of R. B. Jones, would be entitled to acquire stock in the corporation.

At the hearing on the class action issue, plaintiff Hurwitz was questioned extensively as to his duties, as attorney, to protect the confidences and secrets of Mr. Metzler. The record clearly shows that Mr. Hurwitz is fully aware of both the letter and spirit of Canon 4 of the Code of Professional Responsibility and the Ethical Considerations thereunder. Mr. Hurwitz plainly states, and all parties agree, that he has no intention of transgressing that Canon or those Ethical Considerations in the prosecution of this lawsuit. Defendant contends, however, that "observance of those restrictions may well operate to the prejudice of the class," because they "preclude an argument by the plaintiffs that Mr. Metzler has sufficient financial resources to pay a judgment in favor of the class" and because "plaintiffs may also be foreclosed from other arguments concerning the violation or marketing of blocks of R. B. Jones Corporation common stock or the relation between fringe benefits and compensation."[25]

Defendants' argument proves too tenuous. We must not lose sight of our present inquiry: whether "the representative parties will fairly and adequately protect the interests of the class." Defendants' argument pertaining to Mr. Hurwitz's professional duties are totally irrelevant except to the extent that it tends to show his incapacity to protect the interests of the class. And this the argument simply fails to do in any substantial way. As at least five years have passed since Mr. Metzler's financial statement was prepared, and as our economy has engaged in many fluctuations since that time, it is difficult to see how Mr. Hurwitz's forbearance from utilizing this hoary financial data could prejudice the class. Further, the likelihood that the class will have any real need to show that "Mr. Metzler has sufficient financial resources to pay a judgment in favor of the class" is sufficiently small to further reduce the impact of defendants' argument.

■ Plaintiff Hurwitz's representation of defendant Metzler in the late 1960's and early 1970's makes Mr. Hurwitz a less than perfect class representative. It does not, however, relegate him to a position of inadequacy.

---

**24.** Quotations from Defendants' Brief, p. 24 (Jan. 21, 1977).

**25.** Defendants' Brief, p. 25 (Jan. 21, 1977).

## G.

*Is a Conflict of Interest, Sufficient to Transgress the Adequacy Requirement of Rule 23(a)(4), Created by Plaintiffs' Counsel's Representation of Arthur Andersen & Co.?*

Plaintiffs' counsel, Mr. Whittaker, is a partner in a law firm which "does now, and has for the past few years, in any event not particularly on a continuing basis but on isolated transactions as they arise, performed legal services for and at the request of Arthur Andersen & Company's local office in Kansas City." [26] It is not disputed that Arthur Andersen & Co. is the auditor for R. B. Jones Corporation. Further, the evidence shows that Arthur Andersen participated in the preparation of the tender offer circular that is the subject matter of this litigation, and that it was the first to suggest to R. B. Jones the creation of an employee share ownership plan. With these facts in mind, defendants contend:

> Arthur Andersen & Co. have not been named as defendants in this action, although one of the allegations of the Complaint (paragraph 27(g)) is that the pro forma balance sheet in the offering circular was false or misleading, and the Complaint further characterizes the Employee Share Ownership Plan as "fraudulent". Plaintiffs' counsel cannot make a disinterested and unbiased decision as to the advisability of naming them as additional defendants herein. [27]

While the unique and fiduciary relationship which class action counsel owes the members of the class, *Greenfield v. Villager Industries, Inc.*, 483 F.2d 824 (3d Cir. 1973) makes it "proper for courts to consider the ethical conduct of plaintiff's counsel in deciding to certify a class," *Stavrides v. Mellon National Bank & Trust Co.*, 60 F.R.D. 634, 637 (W.D.Pa.1973),[28] the Court does not feel that, even *if* Mr. Whittaker's

conduct were to be deemed unethical (a subject on which we express no opinion whatever), no prejudice has been or will be caused the class as a result thereof. Mr. Whittaker has stated that, while he does not recall if he knew, at the time of the filing of this Complaint, that Arthur Andersen & Co. were the auditors for R. B. Jones, he did not know then, or at the time of the hearing in July, 1976, that Arthur Andersen had any part in the tender offer or the establishment of the Employee Share Ownership Trust.[29] Clearly, therefore, Mr. Whittaker's decision not to join, as a party defendant, any accounting firm that had any part in the preparation of the "pro forma balance sheet appearing on page 14 of the circular," was not attributable to any feelings on his part of loyalty to Arthur Andersen & Co. Mr. Whittaker's decision having been based on objective considerations at the outset, defendants will not now be heard to label his continuing decision not to join the accounting firm as a defendant the product of self-interest and unethical conduct.

Given all the facts, the possibility that Mr. Whittaker's present decision not to join Arthur Andersen & Co. as a party defendant is founded on improper motives and, assuming there to be improper motivation, the possibility of any real prejudice to the class resulting therefrom, are simply too remote, contingent, and tenuous to persuade this Court that inadequate representation results therefrom.

## H.

### Conclusion

For the above-stated reasons, this Court is of the opinion that the typicality and adequacy requirements of 23(a)(3) and 23(a)(4) are satisfied in this action.

---

**26.** Testimony of Mr. Whittaker, Transcript, Vol. B, p. 12 (July 21, 1976).

**27.** Defendants' Brief, p. 26 (Jan. 21, 1977).

**28.** *See also Sayre v. Abraham Lincoln Federal Savings and Loan Association*, 65 F.R.D. 379, 385 (E.D.Pa.1974) and the cases cited therein.

**29.** Transcript, Vol. II, pp. 180–181 (July 21, 1976).

## V

### RULE 23(b)(1): THE RISK OF VARYING ADJUDICATIONS OR VARYING STANDARDS OF CONDUCT

Rule 23(b)(1) provides:

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition (1) the prosecution of separate actions by or against individual members of the class would create a risk of (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

■■■ Given that "the shareholdings of the vast majority of the target shareholders were small, thereby making individual actions for damages unlikely,[30] this Court does not feel that plaintiffs have sustained their burden of showing a risk of separate actions if the class action is permitted. In the time that has elapsed since the tender offer, no other member of the class has initiated any litigation concerning the tender offer or the employee share ownership plan.[31] The only other related litigation that is pending has been brought by two persons who are not members of the proposed class. Consequently, there is little chance of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class; nor is there any real risk of adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications; nor is there any real risk of adjudications

which would substantially impair or impede the ability of any individual members of the class to protect their interests. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 163, 94 S.Ct. 2140, 40 L.Ed.2d 732, 741, n. 4 (1974); 7A Wright & Miller, Federal Practice and Procedure: Civil § 1773, p. 9 (1972). As a result, this action is incapable of being certified as a class action pursuant to Rule 23(b)(1).

## VI

### RULE 23(b)(3): THE PREDOMINANCE REQUIREMENT [32]

Rule 23(b)(3) provides, in part:

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members . . .

The matters pertaining to this "predominance" requirement will now be discussed.

### A.

#### Reliance

While the issue of reliance was discussed earlier in this Opinion with regard to the typicality and adequacy provisions of (a)(3) and (a)(4), defendants, in addition to their (a)(3) and (a)(4) arguments, assert that, because they intend to closely and individually examine each class member about their subjectively relying upon the matters contained in the offering circular, questions affecting individual members of the class will necessarily predominate over questions common to the class.

While it is not necessary to reach the merits of the reliance dispute in ruling on the class action question, this Court must give serious consideration to the effect which the presence of this question will have on the predominance of common questions over individual questions.

---

**30.** Plaintiffs' Brief, p. 33 (Dec. 23, 1976).

**31.** Transcript, Vol. B, p. 21 (July 21, 1976).

**32.** Plaintiffs do not contend that Count II would qualify for class action treatment under Rule 23(b)(2).

Assuming, but not deciding, that the presence or absence of subjective reliance is at issue in § 14(e) and Rule 10b–5 cases, and thus the subject of individualized inquiry at a trial on the merits, this does not defeat plaintiffs' prayer for class action certification. The reasoning underlying this conclusion is perhaps best expressed in *Green v. Wolf Corporation*, 406 F.2d 291, 301 (2d Cir. 1968), where the Court stated:

> Wolf earnestly argues that each person injured must show that he personally relied on the misrepresentations in order to recover and thus any common issues of misrepresentations do not predominate over the individual questions of reliance. Even if Wolf is correct in its assertion of the need for proof of reliance, and we express no views on that issue, we must still reject the argument. Carried to its logical end, it would negate any attempted class action under Rule 10b–5, since as the District Courts have recognized, reliance is an issue lurking in every 10b–5 action. . . . We see no sound reason why the trial court, if it determines individual reliance is an essential element of the proof, cannot order separate trials on that particular issue, as on the question of damages, if necessary. The effective

administration of 23(b)(3) will often require the use of the "sensible device" of split trials.

Another excellent analysis of this problem is found in *Vernon J. Rockler and Co. v. Graphic Enterprises, Inc.*, 52 F.R.D. 335, 345 (D.Minn.1971), where the Court stated:

> Reliance is an issue lurking behind every securities fraud claim, and to require that it first be proven, would effectively negate the concept of a 10b–5 class action. . . . Thus a rigid application of the requirements of Rule 23(a)(2) and (b)(3) . . . has largely been rejected in favor of a policy which permits securities fraud claimants to proceed as a class in spite of foreseeable variation on the issue of reliance. . . . Under such circumstances, the purpose of the Rule dictates that the court take advantage of its flexible provisions. Once the common elements have been adjudicated, the court may or at least could order separate trials on the issue of reliance.

The reasoning employed by the Courts in *Green* and *Vernon J. Rockler* have persuaded the commentators [33] and the vast majority of the courts which have considered the question.[34]

**33.** Referring to the approach taken by the Court in *Green*, it is said in 7A Wright & Miller, Federal Practice and Procedure: Civil § 1781, p. 96 (1972): "[T]his approach seems sound and is entirely consistent with that typically utilized in connection with damage issues, which was discussed earlier." As Professor Moore observed in 3B Moore's Federal Practice, ¶ 23.45[2], pp. 23–762 to 23–764: "[W]here uniform misrepresentations are made to all members of the group, proof of individual reliance as well as individual damages may effectively be severed and treated in subsequent proceedings. . . . On the whole, individual questions with respect to reliance have not defeated the class status of fraud cases . . . ."

**34.** "[D]efendants claim that the individual issues of reliance and the quantum of damages predominate over the common issues of the class, and that because of the possible differences in expertise among the members and because some of the members may have tendered their stock upon the advice of their brokers, plaintiff's claims are not typical of the class. These arguments are, of course, untenable and have been uniformly rejected. . . .

In the event the issues of reliance and damages are found to be individual, it is well established that they will not defeat the class action but merely may necessitate separate trials on these issues." *Feder v. Harrington*, 52 F.R.D. 178, 183 (S.D.N.Y.1970).

"The defendants contend that questions of fact common to the members of the class do not predominate over questions affecting only individuals. The heart of their argument is that proof of reliance by the exchanging Hartford Fire shareholders upon the material fact(s) which the defendants have allegedly misstated and/or omitted from the Prospectus is a sine qua non for recovery. . . . [T]hat the presence of the issue of reliance is no bar to the designation of a class action in a case such as this is beyond dispute." *Herbst v. International Telephone & Telegraph Corporation*, 65 F.R.D. 13, 18–19 (D.Conn.1973).

"Nevertheless, even if reliance and damages were found to be individual issues, the existence of these issues does not defeat the class action. The courts have consistently recognized that the possible necessity for separate

The instant case, involving as it does an alleged fraud perpetrated by defendant by the use of *similar* misrepresentations to numerous persons, is not rendered unsuitable for class action treatment by the fact that those allegedly defrauded reacted to the similar representations in different ways. As observed in *Miller v. Central Chinchilla Group, Inc.*, 66 F.R.D. 411, 414–15 (S.D.Ia.1975):

> In the context of securities fraud litigation, courts have had little difficulty finding common questions predominant where defendants have acted in furtherance of a common scheme on grounds generally applicable to the class as a whole. . . . As the Advisory Committee observed in its comment about the 1966 amendment to Rule 23: "[A] fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class." Advisory Committee's Note to Proposed Rule 23, 39 F.R.D. 69, 103 (1966).

*Simon v. Merrill Lynch, Pierce, Fenner and Smith, Inc.*, 482 F.2d 880 (5th Cir. 1973), cited by defendants in support of their position, is distinguishable, for in that case, the Court ruled that plaintiff's "failure to prove any standardized representations by Merrill Lynch bars a class action whether it is based on Rule 10b–5 or the state common law." There being standardized representations by defendants in the present case, the reasoning employed by the vast majority of courts which have considered the issue persuades this Court that, should it prove necessary, on the merits, for each member of the proposed class to show his subjective reliance on the representations by defendants, this would not cause the questions affecting only individual members to so predominate over questions common to the class as to transgress the requirements of Rule 23(b)(3). This conclusion is compelled not only by the cases cited but, in addition, by the practicalities which inhere in securities fraud/class action litigation. As Professor Loss has stated: "The ultimate effectiveness of the federal remedies . . . may depend in large measure on the applicability of the class action device." III Loss, Securities Regulation 1819 (2d ed. 1961). To allow defendants charged with violating federal securities law to avoid plaintiffs' requests for class action certification by the simple expedient of arguing individual reliance in conjunction with the 23(b)(3) predominance requirement would substantially impair the effectiveness of the Congressional effort in the area of securities regulation. This Court is resolute in its refusal to countenance such an argument.

---

trials on specific individual issues does not bar a class action." *Epstein v. Weiss*, 50 F.R.D. 387, 393–94 (E.D.La.1970).

"Although the potential exists that in establishing reliance certain facts may not be common to the entire class, the courts which have considered the question have concluded that this should not preclude class action treatment." *Jenson v. Continental Financial Corp.*, 404 F.Supp. 806, 813 (D.Minn.1975).

"The mere fact that the reliance issue may differ as to each purchaser should not stand in the way of class action treatment. . . . Thus, as a general rule, securities fraud actions are allowed to proceed as class actions 'in spite of foreseeable variations on the issue of reliance.'" *Reichert v. Bio-Medicus, Inc.*, 70 F.R.D. 71, 75 (D.Minn.1974).

"Defendants further argue that given the plethora of dismal financial information reviewed in the press and elsewhere, they have the right to prove 'that disclosure of still more negative information would not have influenced any investor's decision to purchase City securities.' The defendants may not have this right in a nondisclosure case. In any event, the right to individually disprove causation would not render the class action unmanageable. *Blackie v. Barrack*, 524 F.2d 891, 907 n. 22 (9th Cir. 1975)." *Friedlander v. City of New York*, 71 F.R.D. 546, 550 (S.D.N.Y.1976).

"Rule 10b–5 cases always involve variations in the kind and degree of reliance of each individual investor. But such variations are rarely so substantial as to defeat the class action. . . . In these Rule 10b–5 actions, proof of reliance has usually been considered an individual question which would require separate proof by each claimant only after determination of the common questions." *Mersay v. First Republic Corp. of America*, 43 F.R.D. 465, 471 (S.D.N.Y.1968).

*See also Tober v. Charnita, Inc.*, 58 F.R.D. 74, 84 (M.D.Pa.1973).

## B.

### Damages

Defendants argue that, because the computation of damages for those who tendered their shares will differ from the computation of damages for those who did not,[35] individual issues predominate over common issues. Most all of what was said in the discussion of the Rule 23(b)(3) implications of individual proof of reliance is applicable here. Indeed, most courts have treated the 23(b)(3) aspects of individual proof of reliance and damages together,[36] uniformly rejecting the suggestion that such individualized proof defeats class action certification. Professor Moore sums up the law in this area in 3B Moore's Federal Practice ¶ 23.45[1], p. 23–703, n. 13 (2d ed. 1977), where he states:

> In . . . securities fraud actions, brought under (b)(3), courts have routinely made provision for separate trials or determinations of damages, in which individual claims and defenses on statutes of limitation, reliance, knowledge, etc., can be adjudicated.

 There is no need to belabor the point. That the computation of damages may differ between those class members who tendered their shares and those who did not, fails to transgress the predominance requirement of Rule 23(b)(3).

## VII

### RULE 23(b)(3): THE SUPERIORITY REQUIREMENT

Rule 23(b)(3) provides, in part:

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: (3) the court finds . . . that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The class action has been generally held to be superior to other available methods for the fair and efficient adjudication of securities fraud controversies. *See* the cases collected in 7A Wright and Miller, Federal Practice and Procedure: Civil § 1779, p. 58, n. 41 (1972). The class action device confers "a particularly valuable privilege where the individual claims would be too small to justify separate litigation." 3B Moore's Federal Practice ¶ 23.45[3], p. 23–802 (1977).

In the present case, it cannot be the subject of serious dispute that the class action mechanism is superior to individual suits for the fair and efficient adjudication of the controversy, for approximately 90% of the shareholders at the time the tender offer was made owned fewer than 1,000 shares.[37] As was observed by the Seventh Circuit in *Weeks v. Bareco Oil Co.*, 125 F.2d 84, 90 (1941):

> To permit the defendants to contest liability with each claimant in a single, separate suit would, in many cases give defendants an advantage which would be almost equivalent to closing the door of justice to all small claimants. This is what we think the class suit practice was to prevent.

 After a careful review of the relevant facts, testimony, and law, this Court is firmly convinced that a class action is a superior method for the fair and efficient adjudication of the controversy than would be the alternative of relegating the aggrieved shareholders to individual lawsuits.

Defendants, however, contend that the members of the proposed class can receive all the relief they need under the derivative claim contained in Count I, thereby rendering the class action claim contained in Count II superfluous and thus "not superior" to the derivative claim. Nonetheless, defendants recognize that there are differences in the types of relief sought in Counts

---

**35.** For a discussion of defendants' argument, see pp. 26–28, *supra.*

**36.** *See* the cases cited in footnote 2, pp. 35–37, and the accompanying text.

**37.** Transcript, Vol. B, p. 20 (July 21, 1976).

I and II. First, while, as part of the relief sought in each count, those shareholders who tendered their shares ask to be given the option to rescind their tenders, the class action seeks alternative relief for the tendering shareholders in the form of damages. Second, the class action claim seeks damages on behalf of the non-tendering shareholders instead of damages on behalf of the corporation. Defendants argue that, with respect to those shareholders who tendered, the remedy of rescission sought in Count I is sufficient and, with respect to those who did not tender, any recovery by the corporation in Count I would inure to their benefit.

Even if this Court were to accept the possibility that Count I may be sufficient to protect the interests of the members of the class, this would not end the inquiry, for "superiority" is a comparative term, concerned not merely with the existence of alternatives which the court deems "sufficient" but, rather, with finding the best mechanism possible, consistent with judicial integrity, convenience, and economy, to channel and adjudicate the claims presented in the Complaint. To the extent Count II provides alternative and meaningful remedies from which the class members can choose, these not being provided in Count I, and to the extent Count II affords sure and direct relief, in the form of damages, to certain class members, whereas Count I would afford doubtful and indirect relief to those members, Count II is superior.

While the relatively cumbersome nature of the class suit weighs against its being found "superior to other available methods for the fair and efficient adjudication of the controversy," this cannot counterbalance the fact that, should Count II be stricken as not being superior to Count I, the class members would be deprived of their ability to reap the genuine and substantial relief they seek in Count II.

Plaintiffs have, therefore, satisfied the "superiority" requirement of Rule 23(b)(3).

## VIII

## RULE 23(b)(3): CONCLUSION

Rule 23(b)(3) provides, in part:

The matters pertinent to the findings [of predominance and superiority] include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

The above discussion of the predominance and superiority requirements shows convincingly that, because of their small holdings, almost all shareholders are realistically barred from engaging in this complex securities litigation individually.[38] The parties have stipulated that (1) "[n]o litigation other than this action concerning the tender offer or the establishment of the R. B. Jones Employee Share Ownership Plan and Trust has been filed;"[39] and (2) "for purposes of Rule 23(b)(3)(C) . . . it is desirable to concentrate the claims asserted in Count II of plaintiffs' complaint in this forum."[40]

The Court, being fully cognizant of the problems and potential problems that class suits generally pose, is of the opinion that the difficulties likely to be encountered in the management of this suit as a class

---

**38.** At the time of the tender offer, approximately 90% of the shareholders owned less than 1000 shares. Transcript, Vol. B, p. 20 (July 21, 1976).

**39.** Joint Statement of Uncontroverted Facts, No. 14, p. 3 (March 12, 1976) and Transcript, Vol. B, p. 21 (July 21, 1976).

**40.** *Id.*, No. 13, p. 3.

action are not sufficiently great to tilt in favor of defendants the outcome of our inquiry into either the predominance or superiority requirements of Rule 23(b)(3).

On the basis of the above, therefore, this Court finds that the questions of law and fact common to the members of the class predominate over any questions affecting only individual members. This Court further finds that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Plaintiffs have satisfied all the requirements of Rule 23(b)(3).

## IX

## CONCLUSION

For the reasons above stated, it is hereby

ORDERED that the request of plaintiffs herein to proceed with Count II of this action under Rule 23, F.R.Civ.P. as a class action be, and it is hereby, granted; it is further

ORDERED that this class have as its members those persons who fall within plaintiffs' suggested definition of the class, as more fully set forth on pp. 4–5 of this Opinion.[41]

---

**41.** This Court is aware that the class, as so defined, includes approximately 30 persons who neither tendered their shares nor retained them; rather, they sold their shares on the open market during the tender offer period. Based upon the testimony at the hearing, it is the opinion of this Court that selling shares on the open market after the tender offer was announced was the equivalent, for our purposes, of tendering, the difference between the two responses being merely one of timing. The Court will, of course, amend the class to exclude these persons if it is later convinced that there is cause therefor. Rule 23(c)(1).